Laurence E. McKENNA,
Appellant-Plaintiff,

v.

The SUMNER COUNTY BOARD OF
EDUCATION et al.,
Appellees-Defendants.

Supreme Court of Tennessee.

Oct. 30, 1978.

Rehearing Denied Dec. 18, 1978.

**528**

Charles Hampton White, Nashville, for appellant-plaintiff.

Charles W. Bone, C. L. Rogers, Gallatin, for appellees-defendants.

## OPINION

HARBISON, Justice.

This case arises under the transfer provisions of the Tennessee Teachers' Tenure Act, T.C.A. § 49–1411. Appellant was transferred by the Board of Education, upon recommendation and with concurrence of the Superintendent of Schools, from a position as a full-time principal of a large elementary school to that of principal and teacher at a smaller elementary school in the system. He received the same base salary in the new position, but his total compensation was reduced because there were fewer teachers in the school to which he was transferred. The principal's salary consisted, in part, of a supplement based upon the number of teachers on his faculty.

Appellant insisted that he was entitled to formal written notice of charges and to a hearing before the Board of Education, before he could validly be transferred, insisting that the transfer amounted to a "demotion" in position. In addition, he insisted that the actions of the Board of Education and of the Superintendent were arbitrary, capricious and motivated by politics or other improper considerations.

After a full evidentiary hearing involving conflicting testimony, the Chancellor found that the actions of appellees were not arbitrary, capricious or based upon any consideration other than the statutory criterion of efficient operation of the school system, T.C.A. § 49–1411. He further found that under the circumstances appellant was not entitled to formal notice and a hearing.

After careful consideration, we affirm the decision of the Chancellor. Because the subject of teacher transfers has been the source of considerable litigation in this state, however, and because the language used in some of the reported opinions appears to be conflicting and difficult to reconcile, we think it important to review in some detail the statutory provisions and the decisions construing them. Apparently the subject is one upon which there is wide diversity of opinion among trial judges and among persons administering or concerned with the public school system.

At the time of the trial of this case, appellant was a tenured teacher in the Sumner County schools, serving in his ninth year with that system. He had a Master's Degree plus twelve years experience. In January 1973 he had been made principal of Howard School in Gallatin, an elementary school for children from kindergarten through the second grade. This school had approximately 680 students and 31 faculty members.

On July 19, 1977, appellant was transferred to the position of principal of Millersville School, lying in the southwest portion of Sumner County and having 231 students with 10 faculty members. In his former position he was a full-time administrator, with no teaching duties; at his new position he taught four hours each day in addition to serving as principal. His total compensation at Millersville was $2,145 less than that which he would have received at Howard School for the academic year 1977–78, a differential slightly in excess of ten percent.

Appellant was re-elected for service in the Sumner County school system in April

1977. On May 12, 1977, he executed and returned to the Superintendent a form contract, which recited that he accepted:

".  .  . an appointment to a teaching or other position in the Sumner County Public Schools, subject to the rules and regulations of the Board of Education for the school year 1977–1978."

The form concluded with a statement of understanding that the contract was subject to the provisions of "all applicable legislative enactments of the General Assembly of the State of Tennessee."

On this form appellant designated his position as that of principal of Howard School. He testified that the form had already been executed by the Chairman of the Board and by the Superintendent at the time it was sent to him for signature.

The transfer of appellant to the Millersville School took place on July 19, 1977. The minutes of the Board for that date recite:

"Superintendent Bills recommended that for the efficient operation of our school system that Mr. Larry McKenna, Principal of Howard School, be transferred from Howard School to Millersville Elementary to fill the vacancy created by the resignation of Mr. Charles Anderson. Motion was made by Mr. Brown, seconded by Mr. Hawkins, that this recommendation be approved by the Board. Motion carried unanimously."

Appellant had been told on the morning of July 19 that the transfer would be recommended by the Superintendent, and he was officially advised of it by letter from the Superintendent the next day. He refused to accept the appointment and demanded that he be furnished with formal written charges and afforded a hearing before the Board of Education. These demands were refused by the Board, through its counsel, and this suit resulted.

Appellant has asserted throughout the litigation that he held tenure in his position as principal of Howard Elementary School and that his transfer amounted to a demotion in position, equivalent to a dismissal or suspension under T.C.A. § 49–1412, entitling

him to written charges and the formal notice and hearing provisions of the Teachers' Tenure Act, T.C.A. §§ 49–1414 et seq.

The statutes and case law, however, do not bear out his contention that he held tenure as principal. It has been repeatedly held by the courts of this state that, while principals and other administrative personnel are covered by the Teachers' Tenure Act, they have tenure only as teachers and not in any particular job assignment. The statute itself is clear on this subject, stating:

"Administrative and supervisory personnel shall have tenure as teachers and not necessarily tenure in the specific type of position in which they may be employed." T.C.A. § 49–1401(4).

In one of the first cases construing the act, *State v. Yoakum*, 201 Tenn. 180, 192, 297 S.W.2d 635, 640 (1956), the Court stated:

"No teacher under the tenure law is guaranteed continuity of employment in a particular assignment or school."

*See also State ex rel. Pemberton v. Wilson*, 481 S.W.2d 760, 768 (Tenn.1972) ("we can only conclude that complainant has tenure as a 'teacher' but not tenure as an 'Attendance Teacher'."); *Mitchell v. Garrett*, 510 S.W.2d 894, 898 (Tenn.1974) ("plaintiff had no tenure in the exact position she was holding and she could be properly transferred at the board's discretion."); *Coe v. Bogart*, 519 F.2d 10, 12 (6th Cir. 1975) (legislature "did not intend that a teacher or principal have an entitlement to a specific job to which he is assigned.").

■ There can be no question from the statutory provisions that a teacher having permanent tenure can be dismissed from the school system only for specified reasons, and, when these involve neglect of duty or other misconduct, only after written notice and a formal hearing. *See Sanders v. Vinson*, 558 S.W.2d 838, 844 (Tenn.1977).

In the case of *Fleming v. Wade*, 568 S.W.2d 287 (Tenn.1978), however, it was emphasized that persons holding the office

of principal do so under different contracts and pursuant to separate statutory provisions from those governing classroom teachers. There the Court said:

"The two positions, of course, are not identical. Dismissal of an individual as a school principal would not necessarily justify or require his termination as a tenured teacher." 568 S.W.2d at 289.

Further the Court stated:

"The superintendent, by statute, is entitled to expect the cooperation and support of principals in the school system who, both in theory and in practice, are key figures in the orderly and efficient operation of the schools. The Board of Education and the superintendent must necessarily be accorded considerable discretion in the employment and retention of such personnel." 568 S.W.2d at 290.

The provisions governing transfer of personnel within a school system are separate and distinct from those governing dismissal. The transfer provisions contained in the first tenure statute enacted in 1951 were amended on four subsequent occasions. At all times material to this action the statutes provided:

"49–1411. Transfers within system.— The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a 'teacher' from one location to another within the school system, *or from one type of work to another* for which he is qualified and certificated. Such a transfer can be made only by the concurrent action of the superintendent and the board." (Emphasis added).

Nothing in the text of this statute calls for prior notice or a formal hearing, nor do we believe that it was the legislative intent to make requisite the same procedural steps for transfers as were provided in subsequent sections for out-right dismissal or suspension. Upon consideration, we are of the opinion that the term "transfer" was not intended to be synonymous with the terms "dismissal" and "suspension" used in T.C.A. §§ 49–1412 et seq.

We recognize that these concepts have not been kept separate and distinct in many of the reported cases, and that there are several decisions containing general language to the effect that a "demotion," or transfer of tenured personnel to a position of less responsibility or lower compensation, can validly be made only after formal notice and a Board hearing. After a thorough study of the cases, however, we are of the opinion that, while the result in each case may be justified by its particular facts and circumstances, this language was either dictum or was otherwise not essential to the disposition made.

Upon analysis, it appears that there are actually two lines of cases upon the subject of transfers in this state, and like counsel, from whom we have received excellent briefs, we find it difficult, if not impossible, to reconcile all of the language contained in the various opinions.

In *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635 (1956), a group of tenured teachers had been transferred en masse by action of the Board of Education, over the objection of the superintendent of schools. The transferred teachers filed a complaint and alleged that their transfer was illegal and that it was also arbitrary, capricious and in bad faith. By demurrer, the defendants, in effect, admitted the allegations of the complaint, and this Court held that the complaint stated sufficient facts to withstand challenge by demurrer. Further, the Court held that the Board, under the provisions of the transfer statute as it then existed, could transfer tenured teachers without concurrence of the superintendent, so that, to that extent, the transfer was legal. The Court held, however, that the action of the Board was subject to judicial review and said:

"Where it is shown that there is an arbitrary or capricious use of power being exercised by those in authority the courts will not tolerate the use of this power. The presumption of good faith which is ordinarily accorded to officials of the kind cannot prevail and stand where it is shown as is shown by the allegations of

fact here of an arbitrary and capricious use of power in transferring these teachers." 201 Tenn. at 195, 297 S.W.2d at 642.

The Court held that the teachers in question were not required to seek an administrative hearing before making a direct challenge of the Board's action in the courts. On the other hand the Court did not hold that the teachers were necessarily entitled to written charges and an administrative hearing before they could validly be transferred from one position to another.

In the case of *State ex rel. Gilliam v. Hendrixson,* 202 Tenn. 428, 304 S.W.2d 624 (1957), a transfer of two tenured teachers was enjoined upon their allegation, admitted by demurrer, that not only had there been no charges or accusations against them but "no valid reasons" existed for effecting their transfer. The statute at that time, as now, authorized transfers only "when necessary to the efficient operation of the school system . . . ."

A case which upheld the transfer of a school administrator without formal notice, written charges and a hearing was *Mayes v. Bailey,* 209 Tenn. 186, 352 S.W.2d 220 (1961). In that case the complainant had served as supervisor of the public schools of Claiborne County from 1952 until September 1960, at which time he was relieved of duties by joint action of the superintendent and of the county school board and was assigned to the position of a principal. This was a position of less responsibility and lower pay. He filed suit, seeking restoration to his former position. He contended that the transfer was improper and was politically motivated. After an evidentiary hearing, the trial court found that there was no improper motive and that the factual contentions of the complainant were not sustained.

The Court traced the history of the transfer statutes, and noted that they had been amended following the decision in the *Yoakum* case, so as to expressly require concurrent action by the superintendent and the board of education. The Court said:

"The statute plainly says that the superintendent, with the approval of the board, when necessary to the efficient operation of the school system may transfer teachers from one location to another within the school system or from one type of work to another for which he is qualified and certificated. In this case, there was a recommendation by the superintendent and two-thirds of the members voted in favor of such recommendation. The superintendent stated he believed that such transfer was in the best interest of the school system of Claiborne County.

"There is a presumption of good faith ordinarily accorded to public officials and quasi public officials and there is nothing in this record which would overturn this presumption. There are many matters affecting the proper discharge of the duties of such officials about which they, necessarily, are given discretion and unless such discretion is abused, the courts ordinarily will not interfere." 209 Tenn. at 192–193, 352 S.W.2d at 223.

The opinion concludes:

"We believe that *all the administrative requirements and the requirements of the law* have been met in this case and it is our opinion that the Chancellor has rendered the proper decision." 209 Tenn. at 193, 352 S.W.2d at 224. (Emphasis added).

This clear holding that transfers may be effected for the efficient operation of the system, in good faith, and without any requirement of prior notice and hearing was reaffirmed in *State ex rel. Pemberton v. Wilson,* 481 S.W.2d 760, 770 (Tenn.1972). There the Court said:

"It is our opinion that for us to hold that transfers within the system must be accompanied by charges and a hearing would emasculate the discretion allowed the Board and the Superintendent in the matter of transfers. The fact that such transfer was to a lower-paying teacher position from an administrative position would only have bearing on the question of abuse of discretion."

In the years between the decisions in the *Mayes* and *Pemberton* cases, *supra,* several other cases reported which seemingly have provided support for the contention that a transfer cannot be made without affording the transferee with notice and a board hearing.

Two of these cases, however, involved private acts only, and dealt with specific provisions in such acts requiring notice and hearings before demotion as well as before dismissal or removal. The general Teachers' Tenure Act does not contain the word "demotion" and has different transfer provisions from the Campbell and Hamilton County statutes involved in *State ex rel. Taylor v. Rasnake,* 209 Tenn. 229, 352 S.W.2d 427 (1961), and *McCoy v. McConnell,* 224 Tenn. 677, 461 S.W.2d 948 (1970). In the first of these cases the transfer was held not to comply with statutory requirements, while in the second the transfers were sustained.

In *Rasnake, supra,* and in *Blair v. Mayo,* 224 Tenn. 108, 450 S.W.2d 582 (1970), is found some of the language upon which appellant understandably bases his contentions in the present case. In the latter case the principal and an assistant principal of a high school were transferred to the positions of classroom teachers. Both held tenure in the Cannon County school system. Their transfer was ordered by a majority of the members of the Board of Education, over the express objection of the county superintendent and entirely without his concurrence. It was under these circumstances and upon these facts that the following statement was made by the Court:

"The appellants' contention that the appellees were not entitled to an administrative hearing before they were transferred, must be considered in the light of the facts of the case as the Chancellor found them. The appellees were summarily demoted from the positions they had held for years to lower paying positions without being given any reason for the demotions. This action was as the appellees contend, *dismissal from their existing positions* and violated their rights under the Teachers' Tenure Act. The appellees had the right to bring this suit without making any further effort to get an administrative hearing before the Board." 224 Tenn. at 116, 450 S.W.2d at 586. (Emphasis added).

The actual holding of the Court was that in the absence of a bill of exceptions preserving the trial evidence, the findings of fact of the chancellor were presumed to be correct, and that upon those facts his conclusion that the action of the Board was arbitrary and unjustified would be sustained in a direct action brought by the transferred personnel. Both *Rasnake* and *Blair,* however, contain language indicating that a transfer involving a demotion in position requires prior administrative notice and hearing.

In the case of *Potts v. Gibson,* 225 Tenn. 321, 469 S.W.2d 130 (1971), a tenured teacher was transferred from the position of principal of a high school to principal of an elementary school. In that case he was in fact presented with written charges, and a full evidentiary hearing was held before the Board of Education. The trial court and this Court sustained the transfer and found that the action of the Board was not arbitrary, capricious or unlawful. In that case the transfer had been recommended to the Board by the superintendent.

There is language in the opinion, however, as follows:

"Our cases recognize and to some degree emphasize the right of a teacher having tenure to notice of a hearing before the Board before he can be transferred to a position with less responsibilities and where he will be required to serve at a reduced salary." 225 Tenn. at 328, 469 S.W.2d at 133.

Cited in support of this proposition were the cases of *State v. Yoakum, State ex rel. Taylor v. Rasnake* and *Blair v. Mayo, supra.* There was no reference to the case of *Mayes v. Bailey.*

In the *Potts* case, seemingly the Board conceded that the principal was entitled to notice and a hearing, and much of the opinion is devoted to the adequacy of the notice that was given and to the sufficiency of the evidence heard by the Board.[1]

Perhaps the case upon which appellant places greatest reliance is *Gibson v. Butler,* 484 S.W.2d 356 (Tenn.1972). The opinion in this case was released less than one month after the decision in *State ex rel. Pemberton v. Wilson,* 481 S.W.2d 760 (Tenn.1972), discussed above, in which it had been expressly held that prior notice and a hearing were not requisite to the transfer of tenured personnel. In *Gibson v. Butler,* however, the Court seemed to indicate that such notice and hearing were mandatory if any demotion in status or pay were involved. In commenting upon the transfer of several tenured employees the Court said:

"The Chancellor properly ordered that each be restored to his former position and that he be compensated for the financial loss suffered until such time as he should be so restored. Each was entitled to notice and to written charges justifying his dismissal or demotion. Sections 49–1414 and 49–1415, T.C.A. Each was entitled to an opportunity to be heard by the Board. Section 49–1416, T.C.A." 484 S.W.2d at 358.

The Court held that the rights of the tenured personnel had been violated by action of the School Board. In that case, however, as in *Blair v. Mayo,* 224 Tenn. 108, 450 S.W.2d 582 (1970), the transfers were made without the approval of and over the strenuous objection of the superintendent of schools. This fact alone might well have invalidated the transfers under T.C.A. § 49–1411, and would also have furnished strong evidence of arbitrary or capricious conduct.

When a seeming conflict between this case and the *Pemberton* case, *supra,* was

called to the attention of the Court on petition to rehear, this Court undertook to distinguish *Pemberton* on the ground that:

"there the employee was transferred under circumstances that did not amount to a demotion; here each of the three employees was transferred to a position of lesser responsibility and suffered a reduction in compensation. Each was demoted." 484 S.W.2d at 360.

This attempted distinction of the *Pemberton* case is, at best, tenuous, in view of its express holding that prior notice and a hearing were not requisite and the transfer of tenured personnel to less responsible positions "would only have bearing on the question of abuse of discretion." 481 S.W.2d at 770.

The teacher transfer provisions were further considered by this Court in the case of *Mitchell v. Garrett,* 510 S.W.2d 894 (Tenn. 1974). There a tenured teacher was initially transferred under circumstances clearly amounting to a demotion. Upon her complaint to the trial court, the transfer was set aside and she was ordered to be reinstated. Before the trial court's decision could be implemented, however, the position which the teacher had originally held was abolished. The Board therefore transferred her to a roughly equivalent position, without notice or a hearing. Both the trial court and this Court found the latter action of the Board not to be arbitrary or unreasonable and held that it complied with statutory requirements. The Court cited and followed the *Pemberton* case, which it deemed to be controlling. It distinguished *Gibson v. Butler, supra,* as being a case in which arbitrary and capricious conduct had been established.

We conclude from the statutory language and from the foregoing cases that the transfer of a tenured employee must be made with the concurrence of the superin-

1. In the recent case of *Fleming v. Wade,* 568 S.W.2d 288, 289 (Tenn.1978) this Court repeated the language quoted above from the *Potts* case. In *Fleming,* however, outright dismissal from the system was attempted, and the school principal was given notice and a hearing on written charges, as required by T.C.A. §§ 49–1414 et seq.

tendent of schools and the Board of Education. When so made, it need not necessarily be preceded by formal written notice and a hearing, so long as it is made in good faith, in accordance with the criterion set forth in the statute—efficient operation of the school system. An employee so transferred, however, is entitled to be protected from arbitrary and capricious action, or from transfers actuated by political or other improper motives. To this end he may bring a direct action in the courts to have determined the question of whether or not a transfer was made in accordance with the statutory requirements. Judicial review is limited to determining that question, and must be conducted in light of the broad discretion which the statutes clearly give to the superintendent and to the Board.

As well stated in the case of *Potts v. Gibson,* 225 Tenn. 321, 333, 469 S.W.2d 130, 135 (1971):

"The difficulty in all cases of this nature is to strike a proper balance between that degree of flexibility necessary for the Board of Education to maintain its administrative authority over schools and school personnel and the duty of the Courts to intervene to protect the tenure rights of teachers."

■ It is clear from the cases that a Board of Education *may* afford a transferred teacher notice and a hearing, and in some of the foregoing cases this procedure was followed. It seems to us that this would be a desirable procedure when a demotion in status or when any move other than a pure "lateral" transfer is involved. As presently written, however, the statutes do not actually mandate that procedure, and an otherwise proper transfer will not be invalidated simply because notice and a Board hearing were not afforded.

■ Accordingly we overrule the assignments of error by appellant which assert a statutory right to prior notice and a hearing before his transfer could validly be effected.

■ Since appellant's transfer was made upon concurrent action of the Superintendent and the Board, he bore the burden of proof to establish by a preponderance of the evidence that the transfer was arbitrary, capricious, or improperly motivated. He offered evidence, which, if accepted by the trier of fact, might sustain his contentions. He testified that he had appeared before the Board advocating a new school building for Howard Elementary School, contrary to the wishes and preference of the Superintendent. He contended that teachers and others who testified in support of the Superintendent in this case had supported the latter in a popular election, and that his transfer was actuated by personal or political motives.

■ On the other hand, there was abundant testimony, some of which originated with a witness called on behalf of appellant, to the effect that for a considerable period of time prior to the transfer, there had been tension and dissatisfaction among the faculty members at his school. A number of complaints had been received by Board members from parents, teachers and interested school patrons. These culminated after the close of school in June 1977, when two teachers with many years of experience advised the Superintendent that they would resign rather than serve another year under appellant as principal. It was shown that appellant handpicked the faculty committee to evaluate his performance, rather than permitting faculty election as required by Board policies. There was evidence that he intimidated teachers and created an atmosphere of fear among them, not conducive to a good teaching situation. The Superintendent testified positively that his recommendation of the transfer of appellant was not actuated by political, personal or any other improper motive, but was solely for the efficient operation of the school system. He testified that he felt that appellant would function better in a school with fewer students and faculty members. The school to which appellant was transferred was about the same distance from his home

as that to which he had previously been assigned.

After a careful review of the evidence, we are unable to hold that it preponderates against the factual findings of the Chancellor, who saw and heard the witnesses. Questions of weight and credibility of the testimony were presented. He concluded that the actions of the Superintendent and of the Board comported with statutory requirements and were neither arbitrary nor capricious.

The assignments of error are overruled and the judgment of the Chancellor is affirmed at the cost of appellant.

HENRY, C. J., and COOPER, FONES and BROCK, JJ., concur.