**Dewey WARREN, Plaintiff-Appellee,**

v.

**POLK COUNTY BOARD OF EDUCATION, Oscar Crabtree, School Superintendent of Polk County, Tennessee, Defendants-Appellants.**

Supreme Court of Tennessee.

March 16, 1981.

Charles Hampton White and William Prentice Cooper, Nashville, for plaintiff-appellee.

Robert B. Wilson, III, County Atty. for Polk County, Fillauer, Wilson & Sellers, Cleveland, for defendants-appellants.

## OPINION

FONES, Justice.

Polk County Board of Education appeals from an adverse decree of the Chancery Court of that County in a suit brought to enforce rights asserted pursuant to the Teacher Tenure Act.

Plaintiff was employed as a teacher, with the additional duties of athletic director and coach, at Copper Basin High School, Polk County, on March 17, 1975. He was re-elected to the same position and with the same duties in 1976 and 1977.

Plaintiff was advised by letter dated March 13, 1978, that he had been elected as a tenured teacher in the Polk County school system for the school year 1978–79.

Plaintiff was paid a supplement of $1716.00 for service as athletic director and coach for the school year 1977–78, and it is not disputed that the same supplement would have been applicable for the school

year 1978–79. The athletic director and coach was required to operate a summer training camp in June and July, for which he received two months salary, in addition to the ten month salary as teacher.

As the result of a series of events in May 1978, the Polk County Board of Education relieved plaintiff of his duties as athletic director and coach, did not pay him the coaching supplement or allow him to hold summer camp, but retained him as a tenured teacher. This suit was brought to recover the 1978–79 supplement and salary for June and July and to restore plaintiff to the position of athletic director and coach on the theory that that assignment was protected by tenure. However, after serving as teacher for the 1978–79 school year, plaintiff resigned from the Polk County school system, rendering moot on appeal the issue of reinstatement as athletic director and coach. Thus, the sole issue before this Court is whether the Chancellor's award to plaintiff of the supplement of $1716.00 and two months salary should be affirmed.

James Howard, principal of Copper Basin High School, had heard rumors about the "unhappiness of the community and some of the parents of the football players" about the football program, and had heard that plaintiff was "unwilling to coach at Copper Basin High School." He testified that he talked to plaintiff prior to May 8 about those rumors and was told by plaintiff "they could have the job," to which he responded, in substance, that the superintendent and the board should be told that by plaintiff rather than the principal and that he would call a meeting "to get to the bottom of it." He arranged a meeting in the school cafeteria on May 8, 1978, attended by plaintiff, Mrs. Smiley, Acting Superintendent of Schools, Joe Adcock, a member of the Polk County Board of Education, and Mr. Howard. Mrs. Smiley, Mr. Howard, and plaintiff testified as to their respective versions of the discussion that took place on that occasion. Mr. Adcock did not testify.

Mrs. Smiley testified that plaintiff said "repeatedly" that he would not coach; that if somebody else could do it he would like to

sit back and see how well they could do the job; that he had lost his enthusiasm and just wanted to teach. Mr. Howard testified that plaintiff said that he preferred not to coach anymore; that he would step aside and be an observer to see if someone else had the answer; that plaintiff's response to Mr. Adcock's question of whether plaintiff would coach if asked was, "No, I just prefer to teach." Both Mrs. Smiley and Mr. Howard testified that they construed plaintiff's statements at that meeting as a "resignation" of his position as athletic director and coach.

Plaintiff testified that he did say that he had lost his enthusiasm because some people were trying to tear down the program that he was trying to build up. Plaintiff's version of his response to Mr. Adcock's question was that, in the context that he considered that the job was already his, it having been offered and accepted in March, he said, "If you've got a replacement, if you've got an answer to this problem at Copper Basin High School concerning the football program, I will sit back, and I would like to see this." Mr. Adcock then said, "No, I do not have the answer." Plaintiff denied on cross examination that he had said that he would not coach in 1978 or that he had resigned, and he asserted that he continued to perform the responsibilities of athletic director and coach after May 8.

The Polk County Board of Education met on May 11, 1978, but the position of athletic director and coach at Copper Basin High School was not discussed. A meeting of the board was held on May 18, and according to the minutes "Joe Adcock moved and John Henry Morgan seconded that Dewey Warren be relieved of his duties as athletic director and coach and that Mike Queen assume this position. All members present voted yes."

On May 31, 1978, Mrs. Smiley wrote plaintiff a letter advising him that as a result of the May 8 meeting, the school board had relieved him of his duties as athletic director and football coach.

On June 15, 1978, plaintiff wrote to Mrs. Smiley requesting a copy of charges considered by the board that resulted in relieving him of his position as athletic director and coach and also requesting a hearing before the board on those charges.

On July 3, 1978, Mrs. Smiley advised plaintiff by letter that no charges had been brought or considered by the board; that plaintiff had repeatedly said at the May 8 meeting that he would not coach; that the board's action was "an effort to accommodate your request as well as to provide leadership for the football students at Copper Basin High School." That communication also advised plaintiff that if he wanted a hearing he could appear before the board on July 10, 1978.

Plaintiff and his attorney, Brian McCarty, appeared before the board on July 10, 1978. Mr. McCarty asked the board if it intended to bring charges against plaintiff or call witnesses, or if it had a written resignation; he received negative answers. Some of the board members sought to question plaintiff, but his attorney took the position that it was "inappropriate for his client to say anything." Mr. McCarty then argued that in the absence of charges or a written resignation, plaintiff should be re-elected to his position of athletic director and coach "as of the day he was to be barred." The board took no action on July 10, 1978, to rescind its action of May 18 relieving plaintiff of his duties as athletic director and coach.

The school board's contention was that no formal charges or a hearing was necessary to relieve plaintiff of his duties as athletic director and coach; that such action was in the same category as the transfer and demotion of the elementary school principal in *McKenna v. Sumner County Board of Education,* 574 S.W.2d 527 (Tenn.1978).

Plaintiff says in this Court that *McKenna* does not apply because the sole ground upon which the board took action on May 18 was the "mistaken" assumption that plaintiff had resigned at the May 8 meeting; that that assumption was erroneous and their action legally ineffective to terminate

plaintiff's assignment as athletic director and coach; that the board's failure to pay the supplement and two months salary was a breach of contract.

At the conclusion of the trial, the Chancellor announced his ruling orally from the bench, and his opening remarks were as follows:

"Well I think Mr. Warren may have led them to think he'd resigned. I don't believe what he said was a full resignation."

That was the extent of his fact finding and he thereafter held that the board should have brought charges and held a hearing and that he was going to give them an opportunity to give plaintiff a hearing "following the teacher tenure law." As aforesaid, a decree was entered awarding plaintiff the coaching supplement for the 1978–79 school year and two months salary and giving the Polk County School Board until August 7, 1979, to hold such hearing, and if they failed to do so, plaintiff would be reinstated to his position.

*McKenna* involved a transfer of position from a full-time principal of a large elementary school to that of principal and teacher at a smaller elementary school and a reduction in annual salary of $2,145. McKenna asserted that he held tenure as principal of the larger school and that his transfer amounted to a demotion, equivalent to a dismissal or suspension under T.C.A. § 49–1412, entitling him to written charges and the formal notice and hearing provision of T.C.A. § 49–1414 et seq. with respect to tenure as principal. The Court held that the statutes and case law restrict tenure to the position of teacher and do not extend to any particular job assignment. Noting the apparent conflict in the case law, the Court held that the statutory provisions of T.C.A. § 49–1411 governing transfer within a school system or from one type of work to another were separate and distinct from the statutes governing dismissal and did not require formal charges or a hearing. After an exhaustive review of the case law on that aspect of the issue, the Court held as follows:

"We conclude from the statutory language and from the foregoing cases that the transfer of a tenured employee must be made with the concurrence of the superintendent of schools and the Board of Education. When so made, it need not necessarily be preceded by formal written notice and a hearing, so long as it is made in good faith, in accordance with the criterion set forth in the statute—efficient operation of the school system. An employee so transferred, however, is entitled to be protected from arbitrary and capricious action, or from transfers actuated by political or other improper motives. To this end he may bring a direct action in the courts to have determined the question of whether or not a transfer was made in accordance with the statutory requirements. Judicial review is limited to determining that question, and must be conducted in light of the broad discretion which the statutes clearly give to the superintendent and to the Board.

. . . .

Since appellant's transfer was made upon concurrent action of the Superintendent and the Board, he bore the burden of proof to establish by a preponderance of the evidence that the transfer was arbitrary, capricious, or improperly motivated." *Id.* at 533–34.

█ The position of athletic director and coach is an assignment that falls within the same category as principal and other administrative and supervisory assignments. Tenure cannot be acquired in that status, and there is no requirement of formal charges and a hearing prior to relieving a tenured teacher of that assignment.

In our opinion the decision in this case does not turn upon whether plaintiff's statements at the May 8 meeting can be construed as a "full resignation." We think his statements at that meeting, examined "in light of the broad discretion which the statutes clearly give to the superintendent and the board" were clearly sufficient to support the board's May 18 action as necessary to the efficient operation of the school system.

Plaintiff admitted that he told them he had lost enthusiasm for the coaching responsibilities; that if he could not get better support from the people, he'd be better off in the classroom; that if they had a replacement that had the answer he "would sit back and ... would like to see this." Those statements were made at a meeting called because of rumors of dissatisfaction, particularly among parents of football players in the community; the rumor that plaintiff had said he would not coach at Copper Basin; his statement to the principal that they could have the job; and an abbreviated spring practice of one week with three of the days cancelled because of rain.

Against that background plaintiff, according to his own version of the meeting, responded to board member Adcock's question, "Will you coach if asked," with an invitation to replace him.

The minute entry with regard to the board's action on May 18 described the motion as one to "relieve" Warren of his duties and to delegate those duties to assistant coach, Mike Queen. At the trial, where plaintiff's principal contention was that formal charges and a formal hearing thereon were required, it was brought out that neither Mrs. Smiley, Mr. Adcock, or Mr. Howard made a statement to the board on May 18 that Warren had resigned on May 8. Attention was directed to the fact that a letter of resignation from an elementary school principal was read and accepted by the board, in contrast to the formal action of "relieving" Warren.

The foregoing circumstances, and Mrs. Smiley's testimony and letters to plaintiff, support a finding that the board's action on May 18 was taken for two reasons: the good faith belief that Warren did not desire to coach football at Copper Basin High School, and the necessity of replacing him to improve the football program.

As a result of the correspondence between Mrs. Smiley, the Acting Superintendent, and Warren, plaintiff was offered a hearing before the board on July 10, 1978. At that hearing plaintiff, through his coun-

sel, did *not* take the position, now urged, that the board's action on May 18 was taken solely on the ground that he had resigned on May 8, and he did not seek reversal of that action by showing that he had not resigned. Instead, he declined to make a statement or answer questions and stood on the position that in the absence of a written resignation or formal charges and a hearing in accord with the teacher tenure statutes he had been illegally relieved of his duties.

The *McKenna* decision rendered that position untenable, and cast upon plaintiff in this litigation the burden of proof to establish by a preponderance of the evidence that the action of the board in relieving him of the duties of athletic director and coach was arbitrary, capricious, or improperly motivated. No attempt has been made to meet that burden, and, indeed, this record contains no material evidence in support of that position, had it been asserted.

The decree of the Chancery Court of Polk County is reversed and the suit dismissed. Costs are adjudged against plaintiff.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.