Kenneth N. SPRINGER,
Plaintiff/Appellant,

v.

The WILLIAMSON COUNTY BOARD OF EDUCATION, and Rebecca Schwab, Superintendent of Williamson County Schools, Defendants/Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 5, 1995.

Permission to Appeal Denied by
Supreme Court Aug. 28, 1995.

Richard L. Colbert, Rebecca Wells–Demaree, Cornelius & Collins, Nashville, for Plaintiff/Appellant.

Robert G. Wheeler, Jr., Goodlettsville, for Defendants/Appellees.

### *OPINION*

CANTRELL, Judge.

A reorganization of the central office of the Williamson County School System resulted in the abolition of the office of attendance supervisor. When the incumbent attendance supervisor was transferred to a teaching position in a county school, he sued the Board of Education and the Superintendent of Schools claiming his transfer was politically motivated. The Chancery Court of William- son County held that the transfer was proper. We affirm.

### I.

The plaintiff, Kenneth Springer, an experienced teacher and school administrator, became attendance supervisor of the Williamson County School System in 1984. He is also active in Democratic party politics. He was a member of the Tennessee State Senate in 1981 and 1982 while also serving as principal of Fairview High School.

In 1988 the defendant, Rebecca Schwab, running as an independent, won a contested election for the school superintendent's position in Williamson County. Mr. Springer actively campaigned against her in that election. In 1990 Mr. Springer was again elected to the State Senate on the Democratic ticket. When Ms. Schwab ran for reelection in 1992 on the Republican ticket, Mr. Springer again openly opposed her. The chancellor found, in what is probably an understatement, that the relationship between the two could best be described as "tense." Through late 1991 and the major part of 1992 Ms. Schwab and Mr. Springer were in a dispute over whether Mr. Springer was due a payment of $2,000 for extended contract work. The school board finally approved that payment in October of 1992, over Ms. Schwab's recommendation to the contrary. On many other issues, the superintendent and the attendance supervisor treated each other with suspicion and distrust.

Late in 1992, at the direction of the Board of Education, Ms. Schwab formed an advisory committee to propose a five year plan for the school system. The committee, made up of educators and business leaders was charged with the task of reorganizing the central office. The reorganization plan adopted by the committee and approved by the superintendent eliminated two supervisory positions, Mr. Springer's position as supervisor of attendance and the career ladder supervisor. On March 22, 1993 the Board approved the changes by a vote of nine to three.

The plan called for five new or restructured staff positions in the central office. Mr. Springer applied for each of the positions and went through the same application process as all the other candidates which included an interview with Ms. Schwab. In each case, Ms. Schwab recommended another candidate.

At a meeting of the school board called for May 10, 1993, Ms. Schwab presented her recommendations for the new positions, and recommended that Mr. Springer be transferred to Fairview Middle School to teach physical education. Someone on the board inquired about other positions available for Mr. Springer. Ms. Schwab replied that there were none, and the board approved the transfer.

The next day three positions were posted: a principal's position at a new elementary school, and two positions for high school assistant principals. Ms. Schwab had known on the previous evening that these positions were to be posted. In court she explained her answer to the board by saying that she had meant that there were no other available teaching positions for Mr. Springer. The distinction has some relevancy, because under board policy, assistant principals are to be selected by the principals of the schools involved. Thus, those positions were not available to be filled by the board at the May 10, 1993 meeting.

Mr. Springer did, in fact, apply for all three of the administrative positions posted on May 11, 1993. Ms. Schwab appointed committees to screen the candidates and to make a recommendation to her. Mr. Springer was not among the top candidates for any of those positions. On August 23, 1993 the board approved the last of the three appointments.

## II.

■ Transfers of tenured teachers within the school system are addressed in Tenn.

Code Ann. § 49–5–510. That section provides that a teacher may be transferred from one teaching position to another or from one type of work to another by the concurrent action of the superintendent and the school board.[1] Transferred employees are entitled to be protected from arbitrary or capricious actions and from transfers "actuated by political or other improper motives." *McKenna v. Sumner County Bd. of Ed.*, 574 S.W.2d 527, 534 (Tenn.1978). In *Hyde v. Bills*, No. 86–8–11, 1986 WL 6565, filed in Nashville June 11, 1986, this court addressed the question of whether a transfer based on valid programmatic considerations would nevertheless be invalid if part of the motivation for the transfer was also political. We said,

> If valid programmatic grounds exist that will justify finding that a challenged transfer was "necessary for the efficient operation of the school system," the reviewing courts should not invalidate the transfer because the evidence also suggests that some of the local officials who made the decision might have had ulterior motives. Thus, the controlling question in cases of this sort is whether the local education officials had sufficient, demonstrable grounds upon which to base their decision that a transfer was necessary for the efficient operation of the school system.

■ In this case, the chancellor found as facts that "eliminating the attendance supervisor was not used as a pretext for getting rid of Mr. Springer. His former duties were not simply shifted to some other person with a different title.... Mr. Springer's former secretary now as then, prepares and files all required attendance reports." These findings are presumed to be correct unless the evidence preponderates against them. Rule 13(d), Tenn.R.App.Proc. We think the evidence preponderates in favor of the chancellor's findings.

Eliminating the attendance supervisor's position was only part of the central office

---

1. An appointed superintendent may take such action unilaterally. See Tenn.Code Ann. § 49–5– 510 and Tenn.Code Ann. § 49–21–301.

reorganization. The reorganization came from a committee, not from Ms. Schwab alone, and was part of the school board's five year plan. Another central staff position was also eliminated. When the major part of the duties formerly assigned to the attendance supervisor were being performed by his secretary and continued to be handled in the same fashion, the wisdom of making the change could hardly be doubted.

A transfer, however, has a beginning and an end; a position from which the transfer is made and one to which the transferee is assigned. Mr. Springer has raised the point that the board's concurrence in his transfer to a teaching position was invalid because it was based on the false information given by Ms. Schwab, that no other positions were available. The chancellor agreed with Mr. Springer on this point and held that the board's concurrence was not finally obtained until it approved the appointment filling the last of the three vacant positions.

We agree that the board did finally concur in Mr. Springer's transfer to a teaching position. With the knowledge that he had applied for each of the administrative positions, the board approved some other candidate in each case. Therefore, we conclude that the board finally and conclusively gave approval to the transfer.

The judgment of the trial court is affirmed and the cause is remanded to the Chancery Court of Williamson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

TODD, P.J. (M.S.), and LEWIS, J., concur.