# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 23, 2012 Session

## METROPOLITAN NASHVILLE EDUCATION ASSOCIATION AND JAMES FULLER v. THE METROPOLITAN BOARD OF PUBLIC EDUCATION

### Appeal from the Chancery Court for Davidson County
### No. 04391I    Claudia Bonnyman, Chancellor

---

### No. M2011-02242-COA-R3-CV - Filed March 7, 2013

---

A teacher at Overton High School, who was also a sports coach, challenged the nonrenewal of his coaching contract, claiming the nonrenewal was not in accordance with Tenn. Code Ann. § 49-5-510. The trial court found the contract was not renewed because the teacher refused to follow the guidelines for handling money collected at the sporting events and that the former coach had not met his burden of proof under the statute. We conclude the evidence supports the trial court's ruling and affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Richard Lee Colbert, Courtney Lynch Wilbert, Franklin, Tennessee, for the appellant, James Fuller.

Lora Barkenbus Fox, Emily Herring Lamb, Paul Jefferson Campbell, II, Nashville, Tennessee, for the appellee, The Metropolitan Board of Public Education.

## OPINION

The procedural history and facts of this case are set forth in two earlier opinions, *Metropolitan Nashville Educ. Ass'n v. Metropolitan Bd. of Public Educ.*, 2006 WL 2619982 (Tenn. Ct. App. Sept. 12, 2006), and *Metropolitan Nashville Educ. Ass'n v. Metropolitan Bd. of Public Educ.*, 2009 WL 837884 (Tenn. Ct. App. March 30, 2009), and will not be restated herein except to the extent necessary to address the issue presently before us. The only issue we are asked to decide today is whether the nonrenewal of James Fuller's coaching contract

was lawful in accordance with the requirements of Tennessee Code Annotated § 49-5-510. The trial court held that Mr. Fuller failed to carry his burden of proving the nonrenewal was arbitrary and capricious, or improperly motivated and not necessary to the efficient operation of the school system. For the reasons set forth below, we affirm the trial court's judgment.

## I. BACKGROUND

James Fuller was a mathematics teacher and head coach for boys' basketball and baseball at Overton High School. He was placed on administrative leave in the spring of 2002 after the principal learned that Mr. Fuller was not following established procedures for selling tickets at ball games and turning the collected money over to the school in a timely fashion. Mr. Fuller was transferred to Hillsboro High School for the 2002-03 school year, and he was not assigned to coach any sports teams during that year. Mr. Fuller was returned to Overton for the 2003-04 school year, but he was not returned to his former coaching positions.

In February 2004 Mr. Fuller filed a complaint in the chancery court claiming, *inter alia*, that relieving him from his coaching duties was equivalent to a "transfer" as that term is used in Tenn. Code Ann. § 49-5-510.[1] Mr. Fuller alleged that his transfer was arbitrary and capricious, not necessary to the efficient operation of the school system, and otherwise in violation of Tenn. Code Ann. § 49-5-510. Mr. Fuller requested the court to reinstate him to his previous assignment as baseball and basketball coach and compensate him for his monetary losses.[2]

The trial court granted the Metropolitan Board of Education's (the "Board's") motion for summary judgment and ruled against Mr. Fuller on his breach of contract claim, but it did not specifically address Mr. Fuller's § 49-5-510 statutory claim. Mr. Fuller appealed the trial court's judgment, and the Court of Appeals reversed the trial court's award of summary judgment. This court declined to address Mr. Fuller's argument that the trial court erred when it granted summary judgment on his claims brought under Tenn. Code Ann. § 49-5-510.

The Board appealed the Court of Appeals' judgment to the Tennessee Supreme Court, which issued a *per curiam* order on February 25, 2008, remanding the case to the Court of

---

[1]Mr. Fuller also alleged in his complaint breach of contract and unlawful acts under Tenn. Code Ann. § 49-5-609, which claims are not presently before us.

[2]Although Mr. Fuller was removed from his coaching responsibilities in the spring of 2002, he continued to be compensated as a coach through the end of the term.

Appeals for reconsideration in light of the Supreme Court's opinion in *Lawrence County Education Association v. Lawrence County Board of Education*, 244 S.W.3d 302 (Tenn. 2007). On remand, this Court recognized that shifting a teacher with athletic coaching responsibilities to a full-time teaching position is typically a "transfer" rather than a dismissal or suspension, and explained that the *Lawrence County* decision provides the analysis to use when a teacher challenges the loss of a coaching position under Tenn. Code Ann. § 49-5-510. *Metropolitan Nashville*, 2009 WL 837884, at *4 (citing *White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981)).[3]

Because the trial court had made no ruling on Mr. Fuller's statutory claim brought pursuant to Tenn. Code Ann. § 49-5-510, this Court remanded the case back to the trial court to consider Mr. Fuller's statutory claim in light of *Lawrence County*. Specifically, this Court instructed the trial court to determine whether Mr. Fuller's transfer (nonrenewal of his coaching duties) "could be classified as for the efficient operation of the school system," keeping in mind the presumption of good faith associated with teacher transfers. *Metropolitan Nashville*, 2009 WL 837884, at *5 (quoting *Lawrence County*, 244 S.W.3d at 315 (itself quoting *McKenna*, 574 S.W.2d at 530) (internal quotations removed)).

## II. TRIAL COURT PROCEEDINGS

The trial court tried Mr. Fuller's claim in August 2011 and announced its ruling in open court, following up with a written Final Order. The trial court issued an extensive and thorough ruling from the bench including:

> [T]he plaintiff, a teacher at Overton High School, sued his employer for damages from lost coaching wage supplements and seeks reinstatement as coach of the boys' basketball and boys' baseball teams pursuant to TCA Section 49-5-510. . . .
>
> [T]he plaintiff contends that the transfer statute at TCA 49-5-510 provided protection or rights for him, when in 2002 he was renewed as a coach. The plaintiff asserts that, based upon the language of the statute, the decision to remove the plaintiff from his coaching positions at Overton must be made personally by the director of schools, and it is the director's obligation to assure that the nonrenewal of his coaching position was for the efficient operation of the school system.

___

[3]"Transfer" is defined as "removal from one (1) position to another position under jurisdiction of the same board." Tenn. Code Ann. § 49-5-501(12) (Supp. 2012).

According to the plaintiff, although he was criticized for his collection, control, and reporting of admission money at athletic events, he actually had very few duties as regards money responsibilities and the athletic events. The real reason he was not renewed, says the plaintiff, was not because he failed to follow the money guidelines, but because he supported an unsuccessful candidate for principal. As a result, says the plaintiff, the successful appointed principal conducted a personal vendetta against him. Another reason for the vendetta, says the plaintiff, was that another teacher at Overton stirred up support for his retention over and against the wishes of the principal.

Although the plaintiff was returned to Overton as a teacher pursuant to an arbitration award, he was not returned to his coaching duties, even though incumbent coaches generally retain their coaching assignment from year to year unless he does something to warrant removal. Because there was no annual process of contracting with the plaintiff to serve as coach, the plaintiff reasons that he had an expectation of serving as coach year after year.

. . . . .

The Metropolitan Board of Public Education, hereafter the Board, contends, that although the plaintiff is entitled under the law of the case to a direct challenge of the nonrenewal of his coaching positions under TCA Section 49-5-510, he does not have tenure in that position and he cannot assume renewal of his coaching contract each year. The Board asserts that there is no contract for coaching beyond the year-to-year assignment by the director made under TCA Section 49-2-301(b)(1)(FF), and in such coaching position, there's no right to formal charges and a hearing before a teacher is nonrenewed in the year-to-year coaching job.

The Board argues that principals are responsible for administration and control of a school's athletic program and that principals name coaches on a yearly basis. The Board claims that TCA 49-2-303 places a duty on principals to provide recommendations to the director of schools regarding appointment and dismissal of all personnel assigned to the principal's school, and that consequently, the Overton principal was exercising her duties when she recommended that for the year of 2002 and 2003 the plaintiff should not be reassigned to Overton's baseball and basketball coaching positions.

According to the Board, the principal at Overton, Dr. Dillard, had valid reasons for concluding that the plaintiff was not fulfilling his obligations

-4-

relating to money that came along with his head coaching position.

Further, when the plaintiff was returned to Overton as a result of the arbitration award, Principal Dillard did not learn of his return until after she had recommended and accepted other teachers to coach boys' basketball and boys' baseball. Ultimately, says the Board, nonrenewal of the plaintiff's two coaching positions was necessary to the efficient operation of the school system and was not an arbitrary and capricious decision.

The trial court described the issues it had to decide as (1) whether Mr. Fuller carried his burden to show that nonrenewal of his coaching contract was arbitrary and capricious or improperly motivated and (2) whether the director of schools must decide personally not to renew Mr. Fuller's coaching contract, or whether the director may delegate this decision to his central office staff.

The trial court made the following findings of fact, none of which are challenged by either party on appeal:

> The plaintiff taught math at Overton High School from 1983 until the spring of 2002. He was assistant football and basketball coach at the same school, and in 1991, he began helping the baseball coach. He became the head boys' base - - basketball coach in 1996 and later became head coach for boys' baseball. . . . The Board did not have written contracts for coaching positions and the plaintiff did not sign a contract to coach.
>
> . . . . .
>
> Tickets were sold for admission at the baseball games for the first time during the 2001 and 2001 school year. Tickets to basketball games and to a few annual tournaments had been sold at the gate for years.
>
> . . . . .
>
> The proof was that the school educated the coaches each year about ticket reconciliations and what to do with the moneys that were collected at games: that is, to turn in the money to the business manager as soon as possible.
>
> The plaintiff was present at a meeting for the coaches - - at meetings for the coaches. The plaintiff stated that the rule at Overton was to turn over the funds as soon as possible. The plaintiff knew it was not an accepted practice to take collected money home. The plaintiff testified to such. The plaintiff

admitted it maybe was not a good idea to have students involved in taking up money at games, but he did have students cover gates at baseball games because he was busy and he thought this practice would get students to come to the games. . . . The plaintiff was aware of the obligation to reconcile tickets by tearing tickets, but this was not done during the baseball games by the students nor was it done at the Christmas basketball tournament where he was in charge of tickets.

The plaintiff stated he was told the policies every year for handling the money but he handled the money just as others before him had handled the money. . . .

The plaintiff took the money home from the first five baseball games. This was about $800 as he found out when he finally collected the money and brought it to the school on the demand from the principal, Dr. Dillard.

. . . . .

At an in-service in early 2002, Monica Dillard continued with her efforts to educate the teachers and remind them about basic rules for management of funds belonging to the school and collected from any source. Her written faculty note of the week of February 2002 advises Overton teachers that the school's financial records show areas that must be corrected. She recounted in the February faculty note the auditor's concern that teachers should deliver total collections to the bookkeeper daily. The teacher logs would include teacher - - student names and indicate total funds turned in. Money should be given to the bookkeeper in the manner it was collected, cash or check.

. . . . .

[I]n March of the same year, the athletic principal, Mr. Armistead, sent a written memo to all coaches about ticket reconciliation and ticket funds. The memo was short and to the point. It stated that any and every athletic event, no matter how little or how much is collected, the teacher must complete the ticket reconciliation form. . . . No coach should handle the money other than to give it to Coach Anderson, and there's absolutely positively no exception to the rule, which applies during all seasons. If Coach Anderson was not available for some reason, then his assistant would take the funds. This memo was also provided to all the coaches, including the plaintiff.

In late March 2002 or thereabouts, however, Paul Brunette, an assistant principal at Overton, witnessed the exact ticket problems which had been brought to Monica [Dillard]'s attention by the auditors. As Paul Brunette entered the gym for a game, he noticed that a teacher at the gate was not tearing tickets. The teacher had been told by the plaintiff not to tear tickets. He had also then seen - - Paul Brunette had also seen at an Overton baseball game that students had the cash box and they were not tearing tickets, they were just collecting money. He reported these two incidents and this financial funding management problem to Monica Dillard.

Armed with this report from Paul Brunette and concerned about the fact that the school baseball account was depleted with some invoices outstanding, Monica Dillard met with the plaintiff to address the money problems. She asked if he knew of money due the baseball account and he responded that he had about $600 at home, receipts from the baseball games.

The plaintiff was directed to collect the money and bring it to Dr. Dillard. The money that was turned in was actually about $800. Dr. Dillard reported the financial picture surrounding the plaintiff's conduct to the central office, and soon thereafter, the plaintiff was placed on administrative leave with pay for the purpose of an investigation. The plaintiff was removed from the classroom and from coaching during the leave.

Based on these findings of fact, the trial court then turned to the issues before it and concluded, first, that Mr. Fuller's transfer was for the efficient operation of the school system and was not arbitrary or capricious:

Although the plaintiff believes that Dr. Dillard caused his nonrenewal as coach and his transfer because he did not support her as a future principal at Overton, there was ample reason to remove the plaintiff during the school year over his failure to handle funds properly.

Further, the nonrenewal of the plaintiff in his coaching position where he would be confronted with rules for money that he would not follow was for the efficient operation of the school system and was not arbitrary and capricious. There was no proof except the plaintiff's unfounded suspicions that Dr. Dillard had negative feelings about him that were unfair and without good cause.

-8-

. . . . .

[T]he Court finds that there is ample proof that the reason for nonrenewing the plaintiff's coaching position was that, although the plaintiff was aware of the rules, the plaintiff did not seem to accept the reasoning for the rules and, therefore, the plaintiff was satisfied with collecting the funds and reporting the funds as had been done in earlier years and by other persons besides himself. And as a head coach, the plaintiff had the duty and the obligation to serve as a model to the students in educating them about accountability as regards money. The plaintiff had the obligation and the duty to follow rules, especially rules which would protect the school, would protect the school from accusations about wrongdoing with money, would protect the school from distraction from education.

The court then turned to the second issue before it, whether or not the director of schools must decide personally not to renew Mr. Fuller's coaching contract. The proof at trial was that Dr. Pedro Garcia was the director of schools at all relevant times. Based on the evidence presented, the court concluded that the director was not required personally to decide not to renew Mr. Fuller's coaching contract, but that Dr. Garcia has been aware that Mr. Fuller's coaching contract at Overton was not being renewed, and in fact, did not want Mr. Fuller's contract to be renewed:

Dr. Garcia was aware, according to Dr. Dillard, and the Court finds that Dr. Dillard was a credible witness, that the plaintiff would not be renewed as coach, and Dr. Garcia did not want the plaintiff to be renewed as coach.

Scott Brunette was employed with the board of education during 2002 and 2003. For the board of education, he was the director of athletics. Scott Brunette stated that Dr. Garcia was aware that Mr. Fuller was not going back into coaching at Overton.

. . . . .

[T]he Court finds here that there is no obligation placed upon the director of schools to personally carry out the functions of the director of schools. The director of schools in an urban school system is going to have budgetary decisions, many difficult budgetary decisions, many difficult personnel decisions. And the plaintiff - - the director of schools cannot - - I'm not going to say "cannot." I'm going to say - - because this is what I do believe and find - - that 49-5-510, and the rest of the statutory scheme

-9-

involving the director of schools, did not contemplate or require that the director of schools personally . . . make all budgetary decisions. Some of that -- those tasks, in a large school system, are going to have to be delegated to other people. But the director of schools is ultimately accountable and responsible for any decisions made by persons to whom he delegates . . . those duties.

So in answer to the question, must the director of schools personally decide to not renew the plaintiff's coaching contract, the answer to that issue is, the director of schools is not required to personally decide to not renew the plaintiff's coaching contract.

But the Court does find that Dr. Garcia was aware of the nonrenewal of the plaintiff's coaching contract and was aware that he was not being renewed to go back to Overton to be the head coach.

Mr. Fuller appealed the trial court's judgment to this Court, arguing that the trial court erred in concluding his transfer out of his coaching positions was lawful in accordance with the requirements of Tenn. Code Ann. § 49-5-510.

### III. STANDARD OF REVIEW

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

### IV. MR. FULLER'S TRANSFER WAS NOT ARBITRARY OR CAPRICIOUS

The sole issue on appeal is whether the nonrenewal of Mr. Fuller's coaching contract was lawful pursuant to the requirements of Tenn. Code Ann. § 49-5-510. That statute provides as follows:

The director of schools, when necessary to the efficient operation of the school system, may transfer a teacher from one location to another within the school system, or from one type of work to another for which the teacher is qualified and licensed; provided, that transfers shall be acted upon in accordance with

board policy.

The Supreme Court in *Lawrence County* reviewed the application of § 49-5-510 to a teacher who was relieved of coaching responsibilities:

> [A] director of schools has the statutory power to transfer teachers within the local system. Tenn. Code Ann. § 49-5-510 (2002). "When so made, it need not necessarily be preceded . . . by formal written notice and a hearing, so long as it is made in good faith, in accordance with the criterion set forth in the statute-efficient operation of the school system." *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d 527, 534 (Tenn. 1978); *see also State ex rel. Pemberton v. Wilson*, 481 S.W.2d 760, 770 (Tenn. 1972). If a transfer is not made in good faith and is the product of arbitrary, capricious, or improper conduct, a tenured teacher is entitled to present a direct legal challenge in the courts. *McKenna*, 574 S.W.2d at 534; *Mitchell v. Garrett*, 510 S.W.2d 894, 898 (Tenn. 1974).

*Lawrence Cnty*., 244 S.W.3d at 314.

When challenging the loss of coaching responsibilities pursuant to Tenn. Code Ann. §49-5-510, "[j]udicial review is limited to determining 'whether or not a transfer was made in accordance with the statutory requirements . . . and must be conducted in light of the broad discretion which the statutes clearly give.'" *Lawrence Cnty.*, 244 S.W.3d at 314 (quoting *McKenna*, 574 S.W.2d at 534 (itself referencing Tenn. Code Ann. §[49-5-510])). There is a presumption of good faith associated with teacher transfers, and a plaintiff must prove by a preponderance of the evidence that a transfer was arbitrary and capricious or improperly motivated to be entitled to any relief under this statute. *Lawrence Cnty*., 244 S.W.3d at 315. A decision is arbitrary and capricious if it is not supported by substantial and material evidence. *Pittman v. City of Memphis*, 360 S.W.3d 382, 389 (Tenn. Ct. App. 2011).

The evidence presented at trial supported the trial court's conclusion that Mr. Fuller's coaching contract was not renewed because he refused to follow the established procedures for handling money at Overton High School. That evidence is set out in the trial court's ruling, as quoted above.

Mr. Fuller does not challenge the trial court's findings of fact. He argues instead that the trial court erred in ruling that the decision not to renew his coaching contract was

necessary to the efficient operation of the school system. He claims that Dr. Dillard had a vendetta against him because he did not support her as the next principal of the school, and that she had him transferred because of her negative feelings towards him. Dr. Dillard testified, however, that she did not seek the position of principal and that the only reason she took the position was because she was asked to do so. She also testified that she had a good relationship with Mr. Fuller and felt no personal antagonism towards him.

The trial court specifically found Dr. Dillard was a credible witness. When there is an issue of credibility of witnesses and the weight to be given in-court testimony, we must accord considerable deference to the trial court's factual findings. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). We therefore credit Dr. Dillard's testimony and conclude the trial court did not err in ruling that the nonrenewal of the plaintiff in his coaching position where he had been confronted with rules for money that he would not follow was for the efficient operation of the school system. The evidence presented at trial fully supports the trial court's ruling, with the result that Mr. Fuller has failed to show by a preponderance of the evidence that his transfer out of coaching was arbitrary and capricious or improperly motivated.

## V. THE ROLE OF THE DIRECTOR OF SCHOOLS

Mr. Fuller next argues that his transfer was not in accordance with § 49-5-510 because there was no proof that the director of schools was personally responsible for the decision not to renew his coaching contract. Mr. Fuller argues that Dillon's Rule prevents the director from delegating the task of transferring tenured teachers. Dillon's Rule is a "canon of statutory construction that calls for the strict and narrow construction of local governmental authority." *Arnwine v. Union Cnty. Bd. of Educ.*, 120 S.W.3d 804, 807 (Tenn. 2003) (quoting *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn.2001)).

Contrary to Mr. Fuller's argument, however, two different witnesses testified that Dr. Garcia was aware of Mr. Fuller's transfer away from coaching. Dr. Dillard testified that she knew Dr. Garcia did not want Mr. Fuller in a coaching position upon his return to Overton. In response to a question why she did not consider having Mr. Fuller coach again, Dr. Dillard said:

> Partly because I knew Dr. Garcia did not want him coaching, and Dr. Garcia was my supervisor, my boss, and partly because of the concerns I had about the money issues.

In addition to Dr. Dillard, Scott Brunette, who was employed by the Board as the director of

-12-

athletics, testified that Dr. Garcia was aware that Mr. Fuller was not going back to coaching upon his return to Overton.

As the Board points out in its brief, there is no need for us to determine whether or not the director can delegate the nonrenewal of Mr. Fuller's coaching contract because the evidence at trial was that Dr. Garcia was aware that Mr. Fuller's coaching contract was not going to be renewed and that he did not want Mr. Fuller to continue as a coach. Whether Dr. Garcia is the individual who made the actual decision to transfer Mr. Fuller out of his coaching position or whether the decision was influenced by Dr. Garcia's preference that Mr. Fuller not continue as a coach, the evidence shows that Dr. Garcia was aware of the transfer. If Dr. Garcia disagreed with the transfer, he, as the director of schools, was in a position to prevent it.

Based on the evidence presented at trial and the trial court's findings of fact, we conclude that Mr. Fuller has failed to carry his burden to show that the nonrenewal of his coaching contract was not lawful in accordance with Tenn. Code Ann. § 49-5-510.

## VI. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment dismissing Mr. Fuller's statutory claim that his transfer was not conducted in accordance with the requirements of Tenn. Code Ann. § 49-5-510. Costs of this appeal shall be taxed to James Fuller, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE