Larry G. WHITE, Plaintiff-Appellant,

v.

John BANKS, Raymond Isaacs, Harry Ledford, Joy Shook and Leonard Peters, in their Official Capacities as Members of the Board of Education of Elizabethton, Tennessee; the Board of Education of the City of Elizabethton, Tennessee; and Hoyle Bingham, Superintendent of the Elizabethton Schools, Defendants-Appellees.

Supreme Court of Tennessee.

March 23, 1981.

Charles Hampton White, Nashville, for plaintiff-appellant.

Walter A. Curtis, Elizabethton, for defendants-appellees.

## OPINION

BROCK, Justice.

This case presents the question whether a tenured teacher who also coaches basketball for a public school possesses tenure rights with respect to his coaching duties and the additional compensation paid to him for coaching.

### · I

The underlying facts are not in dispute. Plaintiff, Larry G. White, is a tenured teacher at Elizabethton High School. He was first employed there by defendant Elizabethton Board of Education [the Board] in 1973 as a social studies teacher and basketball coach. Plaintiff is certified as a social studies teacher. There is no certification of coaches, as such, in Tennessee.[1] As compensation for his job, plaintiff received a state teacher's salary, a local teaching sup-

plement, and a local coaching supplement, which were issued in the form of a single check from the Board. During the five school years preceding the instant disagreement, plaintiff was re-elected by the Board each year and signed a form contract with the Board. The contracts provided that he was engaged "as teacher" for the year and must observe rules and regulations "relative to the service of teachers." The contracts specified he was to receive the state salary schedule plus the local teaching supplement. Only the contract for school year 1974–'75 specified, in addition, that he was to receive a coaching supplement.

During those five school years, plaintiff's duties as coach and teacher did not vary significantly. The routine school day for students and teachers lasted from about 8:00 a. m. until 3:15 or 3:30 p. m. Plaintiff's coaching duties included coaching at practice or at games about five and one-half months out of the year. Basketball practice began during the sixth period of the school day, at about 2:30, and lasted until 5:30 or 6:00 p. m.[2]

The instant disagreement arose over plaintiff's employment for the school year 1978–'79. As was the customary practice, school Superintendent Bingham furnished to the Board a list of tenured teachers that Bingham recommended be elected for 1978–'79. The recommended list of names was composed of all teachers already tenured or scheduled to go on tenure that year, and it included plaintiff's name. At the Board's March 31, 1978, meeting, the Board voted to elect those on the list.

At the April 27, 1978, meeting, the Superintendent recommended the same placement of teachers for 1978–'79 as there was in 1977–'78. The Board voted to approve the placement as recommended. Subsequently at the meeting, the Board discussed the placement of plaintiff and voted to re-

1. The record does indicate that the Tennessee Secondary School Athletic Association, a voluntary organization that regulates athletics, requires that coaches hold a valid teacher's certificate.

2. Of the $1,700.00 coaching supplement plaintiff received in 1977–'78, $100.00 was compensation to plaintiff for co-coaching the cross-country team. Plaintiff was apparently relieved of this duty also when he was dismissed as basketball coach.

lieve him as basketball coach but not to change his placement at Elizabethton High School, with the administration being responsible for his final placement. The Superintendent did not voice opposition to this action.

By letter dated May 2, 1978, the Board notified plaintiff of his removal as head basketball coach, effective beginning the school year 1978–'79. Thereupon, plaintiff requested by letter a copy of all written charges that were made and considered in his "transfer and demotion" as head basketball coach, and he requested possible dates for a hearing. The Board responded that it was the Board's position that assignment of a teacher within a given school could be changed at the convenience of and for the efficient operation of the school system, so long as a teacher were qualified and certified for the duties he was asked to accept. The Board stated that plaintiff was welcome, as was any other citizen, to address the Board and discuss matters of concern. Plaintiff's teaching duties were not affected by the Board's action; he taught as usual the following year but did not coach or receive the coaching supplement.

Plaintiff filed this suit in Chancery Court to contest the Board's action. He seeks reinstatement as a coach and a judgment in the amount of the coaching supplement. He argues, first, that the Board violated the Teacher Tenure Act by dismissing him without the Superintendent's concurrence (T.C.A. 49–1411), and by denying him notice and hearing (T.C.A. 49–1412 through 49–1416). He argues, second, that in cities that operate under T.C.A. 6–36–101 et seq. (formerly 6–3601 et seq.) (Public Schools Under Modified City Manager-Council Charter), such as Elizabethton, the power to remove or transfer school employees vests exclusively in the Superintendent. The Chancellor granted judgment for defendants. Plaintiff appealed directly to this Court, pursuant to T.C.A. 49–1417.

## II

We first address the applicability of the Teacher Tenure Act, T.C.A. 49–1401 et seq. The Act defines "tenure" as

"... the statutory requirements, conditions, relations and provisions, in this chapter, under which a teacher employed by a board holds a position as a teacher under the jurisdiction of the board. Administrative and supervisory personnel shall have tenure as teachers and not necessarily tenure in the specific type of position in which they may be employed." T.C.A. 49–1401(4) (emphasis added).

The Act defines "teacher" as including "all teachers, *supervisors, principals,* superintendents, and all other certified personnel" employed by a local board of education for service in the school. T.C.A. 49–1401 (emphasis added). "Dismissals and suspensions" are covered by Section 49–1412. That section sets forth five conditions under which a teacher may be dismissed: incompetence, inefficiency, neglect of duty, unprofessional conduct and subordination. "Transfers" within a school system are governed by a different section, § 49–1411, which provides,

"The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a 'teacher' from one location to another within the school system, or from one type of work to another for which he is qualified and certificated. Such a transfer can be made only by the concurrent action of the superintendent and the board."

In *McKenna v. Sumner County Board of Education,* 574 S.W.2d 527 (Tenn.1978), we reviewed a number of teacher tenure cases. *McKenna* involved a shift of a tenured teacher from the position of full-time principal in a large school to that of principal and teacher in a smaller school, which the principal alleged was a "demotion." The central issues were whether the shift amounted to a "dismissal and suspension," § 49–1412, or to a "transfer within the system," § 49–1411, under the Act, and whether the applicable statute had been violated. The Court decided that only a transfer had occurred and interpreted the transfer provision to mean that when a

transfer is made with the concurrence of the superintendent and the board, it need not be preceded by formal written notice and a hearing (as would be the case for dismissals) as long as it is made in good faith, for the efficient operation of the school system, and not arbitrarily, capriciously, or due to political or other improper motives. *Id.* at 533–34.

■ The statute makes clear that while administrators and supervisors do not have tenure in their particular positions, they "shall have tenure as teachers." T.C.A. § 49–1401(4). The legislative intent expressed in these provisions is that the dismissal or transfer of supervisors and administrators should be treated under the Act in the same manner as dismissals or transfers of teachers. For example, the firing of a principal is to be viewed just as the firing of a teacher; it is governed by the dismissal provision. And a shift from principal to teacher or vice versa, or from full time principal to principal and teacher as in *McKenna*, is to be viewed just as a transfer of a teacher from one type of work to another; it is governed by the transfer provision.[3]

■ We hold that a teacher, who also is employed as an athletic coach by a school board, has two sets of rights, *e. g.*, (1) his position as a teacher is protected by tenure, assuming that he has acquired tenure status, and, (2) his position as a coach is protected by whatever contract he has with the board to perform coaching duties, but not by tenure.

■ Relieving a teacher-coach of his coaching duties only, as is the case here, is not a "dismissal or suspension" of a teacher, but is equivalent to a "transfer within the system" and is governed by T.C.A., § 49–1411. *McKenna v. Sumner County Board of Education, supra.*

We conclude that the Superintendent acquiesced in the action of the Board in relieving the plaintiff of his coaching duties, and, thus, that the "transfer" complies with T.C.A., § 49–1411. Neither is it shown that this action was in violation of plaintiff's coaching contract, if any, with the Board.

### III

■ Finally, we have examined the provisions of T.C.A., § 6–36–101, et seq., dealing with the operation of the public schools within cities organized under Modified Manager-Council Charters. We find no basis for concluding, as urged by the plaintiff, that in such school systems the Superintendent has superior authority over the City Board of Education in hiring, firing or transferring school personnel. We hold that the respective authority of the Superintendent and the Board of Education in such city systems is the same as that existing in county systems under the general law. The Board's authority in such matters is paramount. The Chancellor so held and we agree. *See, Howard v. Bogart*, Tenn., 575 S.W.2d 281 (1979).

We find no error.

The decree of the Chancellor is affirmed. Costs are taxed against the plaintiff-appellant.

HARBISON, C. J., and FONES and COOPER, JJ., concur.

---

**3.** An analogous treatment of principals and supervisors is found in the statutes concerning certification. *See* T.C.A. 49–1201 et seq. The legislature requires that not only teachers but also principals and supervisors hold a valid certificate of qualification. *Id.* The State Board of Education has jurisdiction over the issuance of certificates to "superintendents, supervisors, principals, and public school teachers." T.C.A. 49–1235.