IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 27, 2010 Session

## FRANKLIN COUNTY BOARD OF EDUCATION v. LISA CRABTREE, ET AL.

Direct Appeal from the Circuit Court for Franklin County
No. 15374-CV        Buddy D. Perry, Judge

No. M2009-01940-COA-R3-CV - Filed July 1, 2010

This appeal arises from a declaratory judgment action. The trial court determined that Defendant teacher's grievance against the Franklin County Board of Education was not subject to arbitration under the collective bargaining agreement between the Board and the Franklin County Education Association. The trial court also dismissed Defendant teacher's counterclaim under Tennessee Code Annotated § 49-5-510. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Richard L. Colbert and Courtney L. Wilbert, Nashville, Tennessee, for the appellants, Lisa Crabtree and Franklin County Education Association.

Robert G. Wheeler, Jr., Goodlettsville, Tennessee, for the appellee, Franklin County Board of Education.

## OPINION

This dispute concerns whether a teacher's grievance against the Franklin County Board of Education ("the Board") was subject to advisory arbitration under the collective bargaining agreement entered into by the Board and the Franklin County Education Association ("the FCEA"), and whether the Director of School's decision to remove the teacher from her coaching assignment and assignment to teach one physical education class was arbitrary and capricious under Tennessee Code Annotated § 49-5-510. Defendant/Appellant Lisa Crabtree (Ms. Crabtree) has been a teacher at Franklin County High School since 2001. She taught three English classes and coached the girls' basketball team through the end of the 2004-2005 basketball season. In addition to teaching English,

Ms. Crabtree also taught a fourth block physical education class that served as a conditioning class for members of the girls' basketball team. In March 2005, she was relieved of her coaching duties by the Director of School, Charles H. Edmonds (Mr. Edmonds). She was also removed from her assignment as teacher of the fourth block physical education class, but remained an English teacher at Franklin County High School.

Following her removal from the coaching position, Ms. Crabtree filed a grievance request with the Board under the collective bargaining agreement ("CBA") entered into by the Board and the FCEA. In her request for relief, Ms. Crabtree stated that she sought to "immediately be returned to her coaching duties with all rank, compensation and privileges ascribed thereto." Mr. Edmonds responded to her grievance by letter dated March 16, 2005, in which he advised Ms. Crabtree that coaching assignments were expressly excluded from the terms of the CBA. Communication between Ms. Crabtree, Mr. Edmonds, the Board, the FCEA, and the Tennessee Education Association ("TEA") ensued, and in April 2005 the staff attorney for the TEA advised Mr. Edmonds that the FCEA would pursue arbitration of the matter if Mr. Edmonds did not forward Ms. Crabtree's grievance to the Board. The matter was set to be heard by an arbitrator on October 27, 2005.

On October 18, 2005, the Board filed a declaratory judgment action in the Circuit Court for Franklin County. In its complaint, the Board sought a declaration that the decision not to rehire Ms. Crabtree as the coach of the girls' basketball team was not a matter subject to arbitration under the CBA, and an injunction against arbitration of the matter. Ms. Crabtree and the FCEA answered and counter-complained on November 11, 2005, and filed an amended answer and counter-complaint in October 2007. Ms. Crabtree and the FCEA denied that the Board was entitled to a declaratory judgment and asserted that Mr. Edmonds had relieved Ms. Crabtree of her duties as girls' basketball coach in violation of the CBA. They stated that they had agreed to continue the arbitration scheduled for October 27, 2005. In their amended counter-complaint, Ms. Crabtree and the FCEA asserted the Board had breached the terms of the CBA by refusing to participate in arbitration, and that Ms. Crabtree had suffered monetary damages in the amount of $4,700 a year and damages to her professional reputation. They also asserted that the Board had refused to arbitrate in good faith in violation of Tennessee Code Annotated § 49-5-609(a). Ms. Crabtree and the FCEA further asserted that the transfer of Ms. Crabtree from her coaching position was arbitrary and capricious and not in accordance with the CBA and was, therefore, in violation of Tennessee Code Annotated § 49-5-510. They prayed for a judgment in their favor, reinstatement of Ms. Crabtree to her position as the girls' basketball coach, back pay and other compensation, and that the Board be ordered to comply with the CBA by arbitrating Ms. Crabtree's grievance.

The trial court heard the matter on August 3, 2009, and entered final judgment on September 1, 2009. After making extensive factual findings and engaging in a detailed analysis of the relevant statutes and case law, the trial court dismissed Ms. Crabtree's and the FCEA's counter-claim under Tennessee Code Annotated § 49-5-510 and determined that the removal of Ms. Crabtree from the coaching assignment was not a matter governed by the CBA or subject to its grievance procedures. The trial court accordingly entered judgment in favor of the Board, and Ms. Crabtree and the FCEA filed a timely notice of appeal to this Court.

## Issues Presented

Ms. Crabtree and the FCEA present the following issues for our review:

(1)     Since Ms. Crabtree's coaching assignment and teaching assignment were interrelated, and since her removal from her coaching assignment affected her in her teaching assignment, did the Trial Court err in concluding that the grievance filed by the FCEA and Ms. Crabtree could not be pursued under the grievance procedure in the CBA?

(2)     Since Ms. Crabtree was transferred because she followed the instructions of her superiors, and since her transfer was not in accordance with Board of Education policy, does the evidence preponderate against the Trial Court's finding that her transfer was neither arbitrary nor capricious?

## Standard of Review

We review the trial court's findings of fact *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). To preponderate against a trial court's finding of fact, the evidence must support another finding of fact with greater convincing evidence. *Mosley v. McCanless*, 207 S.W.3d 247, 251 (Tenn. Ct. App. 2006). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's determinations on questions of law, and its application of law to the facts, *de novo*, however, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Similarly, we review mixed questions of law and fact *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

## Discussion

We first address Ms. Crabtree's and the FCEA's (hereinafter, collectively, "Appellants") assertion that the trial court erred by determining that the removal of Ms. Crabtree from the position of coach of the girls' basketball team was not governed by the CBA. In their brief to this Court, Appellants argue that Ms. Crabtree was hired primarily to serve as the basketball coach with teaching duties. They assert, "[a]lthough she was a teacher, the focus of her recruitment was not on her services in the classroom[,] it was on her services as a coach. Ms. Crabtree was lured to Franklin County High School to help turn around the girls' basketball   program." The Board, on the other hand, characterizes Ms. Crabtree as an English teacher who coached pursuant to one-year contracts, which included a pay supplement in the amount of $4,700 per year.

Regardless of which characterization is accurate with respect to the primary motivating factor

in the hiring of Ms. Crabtree, under the supreme court's holding in *Lawrence County Education Association v. Lawrence County Board of Education*, 244 S.W.3d 302 (Tenn. 2007), it is clear that the provisions of the Education Professional Negotiations Act ("EPNA") as codified at Tennessee Code Annotated § 49-5-601, *et seq*., do not apply to coaching or non-licensed positions. The *Lawrence County* court stated, "any contractual protections emanating from the EPNA are relevant to persons only in their status as professional employees and not in their status in non-licensed positions." *Lawrence County*, 244 S.W.3d at 316. The court held that, because coaching positions do not require a license "in the same regard as the teaching profession[,]" the statutory rights provided by the EPNA could not be construed to extend to coaching positions. *Id.* The court further held that the grievance procedure section contained in the CBA in that case applied only to grievances of a professional employee arising from the professional aspects of that employee's employment. *Id.* at 317. The court held that, because the EPNA does not extend to positions not requiring a professional license, and because the terms of the CBA in that case did not protect coaching assignments, the coaching assignment at issue in *Lawrence County* was governed by one-year term assignment contracts. *Id.*

This Court reached the same conclusion upon remand from the supreme court in *Metropolitan Nashville Association v. Metropolitan Board of Public Education*, No. M2008-00405-COA-RM-CV, 2009 WL 837884 (Tenn. Ct. App. Mar. 30, 2009). In *Metro Nashville*, we reconsidered our earlier holding that, under the CBA in that case, a teacher's entire dispute, including his coaching assignment, was governed by the grievance procedure delineated in the CBA and subject to arbitration. *Id.* at *1. We determined that, in light of the supreme court's holding in *Lawrence County*, the trial court did not err by awarding summary judgment to the Metropolitan Board of Public Education with respect to whether the grievance was governed by the CBA. *Id.* at *4. In *Metro Nashville*, we observed that, under *Lawrence County*, "'regardless of the language of the locally negotiated agreement, coaching and other assignments that do not require a license are not subject to the collective bargaining process because of the wording of specific provisions of the EPNA.'" *Id.* (quoting *Cannon County Bd. of Educ. v. Wade*, M2006-02001-COA-R3-CV, 2008 WL 3069466, at *7 (Tenn. Ct. App. July 31, 2008)). We noted that the coach's argument in *Metro Nashville* that his situation was distinguishable from the coach in *Lawrence County* because his coaching responsibilities were not treated as distinct from his teaching assignment was a "distinction[] without a difference" because the issue was determined by the authority granted under the EPNA. *Id.*

The reasoning contained in *Metro Nashville* applies with equal force here. Appellants in this case assert that Ms. Crabtree was hired to coach basketball, that her teaching assignments were secondary, and that her grievance was subject to the CBA because the decision to remove her from the coaching assignment affected her position as a teacher where she was removed from her assignment as a teacher of the fourth block Physical Education class. Despite Appellants' assertion that Ms. Crabtree's teaching and coaching responsibilities "plainly overlapped" and that she "was offered a single position as Girls' Basketball Coach with teaching responsibilities," the grievance form contained in the record demonstrates that the only relief Ms. Crabtree sought from arbitration was to be reinstated to the coaching assignment. Additionally, the *Lawrence County* court observed

-4-

that a tenured teacher with coaching responsibilities traditionally has "two separate, but related, rights in regard to employment." *Lawrence County*, 244 S.W.3d at 314. The teaching position is protected by tenure status; the coaching position "'is protected by whatever contract he has with the board to perform coaching duties.'" *Id.* (quoting *White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981)). As we stated in *Metro Nashville*, coaching assignments of teachers in the public schools simply are not subject to the collective bargaining process provided by the EPNA. *Metro Nashville*, 2009 WL 837884, at *4. "[A]ny contractual protections emanating from the EPNA are relevant to persons only in their status as professional employees and not in their status in non-licensed positions." *Lawrence County*, 244 S.W.3d at 316.[1]

We next turn to Appellants' assertion that the trial court erred by dismissing their counter-claim under Tennessee Code Annotated § 49-5-510.[2] Appellants' argument, as we perceive it, is that

---

[1]The Lawrence County court stated:

In summary, we reiterate several important principles relating to the collective bargaining process: (1) the Board of Education is the supreme power in the school system; (2) the Board of Education assigns duties to the director; (3) the director acts for the Board of Education; (4) the director's authority over personnel decisions must be exercised consistent with the Board of Education's policies and collective bargaining agreements; (5) the delegation of authority to the director over personnel matters does not alter, diminish, or supersede the authority of the Board and teachers to negotiate effective agreements under the EPNA; (6) all acts of the director must be consistent with the Board's contracts; (7) the director's power to transfer tenured teachers under Tennessee Code Annotated section 49-5-510 must be exercised in a manner compliant with any existing collective bargaining agreement; (8) the collective bargaining agreement is limited in scope to personnel in their positions as professional employees; (9) transfers or assignments are permissive subjects of bargaining that the Board may-but is not required to-negotiate; (10) such subjects of bargaining govern personnel only as to their professional employee status; (11) professional employees who assume duties for which no license is required are governed in that supplemental capacity by year-to-year contracts; and (12) such year-to-year appointments are not entitled to the benefits of the collective bargaining process. Thus, we are constrained to hold that our statutes preclude an education association, as the bargaining unit for the licensed professional employee, from representing teachers in their capacity as coaches.

*Lawrence County Educ. Ass'n. v. Lawrence County Bd. of Educ.*, 244 S.W.3d 301, 318 (Tenn. 2007).

[2]The Code provides:

The director of schools, when necessary to the efficient operation of the school system, may transfer a teacher from one location to another within the school system, or from one type of work to another for which the teacher is qualified and licensed; provided, that transfers shall be acted upon in accordance with board policy and any locally negotiated agreement.

(continued...)

Mr. Edmonds' decision to remove Ms. Crabtree as coach of the girls' basketball team was arbitrary because it was made as a result of Ms. Crabtree's actions in the physical education class; that her actions in the class were a direct result of her supervisor's instructions; and that the decision was not in the best interests of the school. Our inquiry, however, is to review the record to determine whether the trial court erred in concluding that Mr. Edmonds' decision to remove/transfer Ms. Crabtree from the coaching position was arbitrary or capricious.

The decision to assign a teacher with coaching responsibilities to a full-time teaching position generally is considered a transfer rather than a dismissal or suspension. *White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981). The statutes afford broad discretion to the director of schools to transfer teachers within the local school system. *See Lawrence County*, 244 S.W.3d at 314; *Metro Nashville*, 2009 WL 837884, at * 4 (quoting *Mitchell v. Garrett*, 510 S.W.2d 894, 898 (Tenn. 1974)). A director of school's decision to transfer a teacher must be "'made in good faith, in accordance with the criterion set forth in the statute - efficient operation of the school system.'" *Id.* (quoting *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d 527, 534 (Tenn. 19778)). A director's decision to transfer a teacher is afforded a presumption of good faith, and the party challenging the decision carries the burden to establish, by a preponderance of the evidence, that the decision was arbitrary, capricious or "improperly motivated." *Lawrence County*, 244 S.W.3d at 315. "The determinative question is whether the transfer could be classified as for the 'efficient operation of the school system.'" *Id.*

In this case, the trial court determined that Appellants' allegations that Dr. Edmonds' decision to transfer Ms. Crabtree from her coaching position was arbitrary and capricious were "without merit." The record before us includes written communication from Ms. Crabtree to Mr. Edmonds in response to difficulties that had arisen in the girls' basketball program, which included complaints by parents, and it is undisputed that a "situation" had arisen by August 2004. The record also contains Mr. Edmonds' communication to the Board stating, in part,

> Some of the more serious concerns still exist. . . . I have had many contacts from parents of players over the past week. All of the parents who have talked with me want her [Ms. Crabtree] replaced. Some have stated that their daughters will not play if she is the Coach; other [sic] stated that they would move to Huntland or another county, if Coach Crabtree returns as Coach.
>
> Coach Crabtree has many good attributes as a basketball coach. However, there are many negatives associated with her style of dealing with players. I sincerely believe that it is time to make a change in coaches for the overall good of the program and

[2](...continued)
Tennessee Code Annotated § 49-5-510 (2009).

the welfare of student athletes.

Mr. Edmonds also acknowledged that he had three letters in support of Ms. Crabtree, but stated that it was his "responsibility to make an objective decision based on what is best for the girls' basketball program and the student athletes."

Appellants also assert that Mr. Edmonds' removal of Ms. Crabtree was in violation of section 49-5-510 because it was in contravention of Board Policy 5.115. The policy contained in the record provides:

> Reassignments shall be non-discriminatory and shall not be arbitrary or capricious. Employees shall be reassigned as necessary for efficient operation of the schools.
>
> Reassignments shall be made by the employee's immediate supervisor with approval by the director of schools.

The policy defines reassignment as "to move to another assignment within the same school or administrative unit." Appellants assert that Ms. Crabtree's immediate supervisor was Harold Roberts (Mr. Roberts), principal of Franklin County High School in 2004-2005. They argue that Mr. Roberts did not make the decision to reassign Ms. Crabtree; that he would not have recommended that she be reassigned; and that Mr. Roberts was not consulted by Mr. Edmonds with respect to the decision to reassign her.

The Board, on the other hand, argues that the Board Policy 5.115 applies to professional employees. It asserts that the Master Contract entered into by the Board and the FCEA governs the definition of "employee," and that the Master Contract defines employee as "any professional employee included in the negotiations unit." The Board further asserts that, assuming Policy 5.115 applies to coaching positions, Tennessee Code Annotated § 49-5-510 applies to "transfers" and not to "re-assignments," whereas the section of Policy 5.115 relied on by Appellants is applicable to "re-assignments" and not "transfers."

Article II of the Master Contract contained in the record provides:

> The phrase "professional employee" includes any personnel employed by the Board in a position which requires a certificate issued by the State Department of Education for service in public elementary and secondary school of Tennessee, supported, in whole or in part, by local, state, or federal funds.

It further defines "teacher" or "employee" as, "any professional employee included in the negotiations unit." Article XI of the Master Contract provides, "No reassignments or transfers shall be made without consulting the principals involved."

Clearly, under the Master Contract, Mr. Edmonds would have been required to consult Mr.

Roberts before re-assigning or transferring Ms. Crabtree in her professional capacity as a licensed teacher. However, in light of the holding in *Lawrence County* that coaching positions are not within the purview of CBA's, and under the definition of "employee" contained in the Master Contract, the Master Contract clearly does not govern Ms. Crabtree's assignment as coach of the girls' basketball team. Under section 49-5-510, the question of whether Mr. Edmonds was required to consult Mr. Roberts before removing Ms. Crabtree from her coaching position is governed by the Board's policy where section 49-5-510 mandates:

> [P]rovided, that transfers [by the director of schools] shall be acted upon in accordance with board policy and any locally negotiated agreement.

Notwithstanding the Board's argument that the section applies only to "transfers" and not "re-assignments" and that Ms. Crabtree was "re-assigned" within the same school, *Lawrence County* reaffirms that, under the statute, "'[r]elieving a teacher-coach of his coaching duties only . . . is equivalent to a 'transfer within the system.'" *Lawrence County*, 244 S.W.3d at 314 (quoting *White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981)). Accordingly, we turn to Appellants' assertion that Mr. Edmonds acted in contravention of Board policy by transferring her from her coaching position without the approval of Mr. Roberts.

Upon review of the record, we must disagree with Appellants' argument that Mr. Edmonds did not "consult" with Mr. Roberts regarding the decision to remove Ms. Crabtree from her coaching position. The record reflects that Mr. Roberts participated in the discussion regarding whether Ms. Crabtree should remain in the coaching position and that he was, as Appellants assert, "supportive" of her. We must disagree with Appellants, however, that Board Policy 5.115 requires the director of schools to obtain the principal's approval in order to remove a teacher from a coaching assignment for three reasons. First, the Policy clearly is intended to mirror the statutes where it cross references Tennessee Code Annotated §§ 49-2-301 and 49-5-401 and 49-9-510. Second, like section 49-9-510, the Policy provides that the director of schools has the authority to "transfer employees as necessary for efficient operation of the schools." Third, the Policy provides that re-assignments "shall be non-discriminatory and shall not be arbitrary or capricious" and that [e]mployees shall be reassigned as necessary for efficient operation of the schools." Although it states that "[r]eassignments shall be made by the employee's immediate supervisor," the Policy further requires that re-assignments must be approved by the director of schools. In light of the entirety of the Policy, we do not construe the Policy as divesting the director of schools of the authority to remove a teacher from a coaching position when the efficient operation of schools so requires. As noted above, the director of schools enjoys a presumption of good faith and, in light of the entirety of the record, we agree with the trial court that Appellants did not carry their burden to demonstrate that Mr. Edmonds decision was not made in good faith to further the efficiency of the school. Further, the evidence contained in the record does not preponderate against the trial court's finding that Mr. Edmonds' decision to remove Ms. Crabtree from her coaching assignment was neither arbitrary nor capricious.

***Holding***

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants, Lisa Crabtree and the Franklin County Education Association, and their surety, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE