IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 11, 2022 Session

IN RE  LEGION S.

**Appeal from the Juvenile Court for Anderson County**
**No. 20-1093  Brian J. Hunt, Judge**
_____

**No. E2021-01198-COA-R3-PT**
_____

The Tennessee Department of Children's Services filed a petition to terminate a mother's parental rights to her daughter based on severe child abuse and failure to manifest an ability and willingness to assume custody of the child.  The trial court granted the petition, finding that the two statutory grounds were proven by clear and convincing evidence and that terminating the mother's parental rights is in the best interests of the child.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Curtis W. Isabell, Clinton, Tennessee, for the appellant, Alisa S.

Herbert H. Slatery III, Attorney General and Reporter, and Kathryn A. Baker, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**FACTS AND PROCEDURAL BACKGROUND**

Alisa S. ("Mother") and Christopher S. ("Father") (together, "Parents") are the biological parents of Legion S., born in June 2020.[1]  The Department of Children's Services ("DCS") has interacted with the family for several years,[2] and it became involved with

_____
[1] In actions involving minors, it is this Court's policy to protect the privacy of the children by using only the first name and last initial, or only the initials, of the parties and witnesses, as appropriate.

[2] The record indicates that in 2019, seven of Legion's siblings or half-siblings were court-ordered

Legion almost from birth. DCS received a referral on June 19, 2020, alleging that Legion had been born with neonatal abstinence syndrome ("NAS")[3] and had tested positive for buprenorphine, methamphetamine, and THC at delivery. On June 24, 2020, the Juvenile Court for Anderson County ("Juvenile Court") entered an ex parte protective order placing Legion into the custody of the Department of Children's Services ("DCS"), finding probable cause that she was dependent and neglected. Legion has been in a foster home ever since.

The first family permanency plan to include Legion was created on July 9, 2020. The plan had a target completion period of eight months, with a dual permanency goal of "return to parent" or "adoption." Following a permanency hearing, the Juvenile Court ratified the plan on August 18, 2020. The plan required Parents to (1) complete a mental health assessment and follow all recommendations, take medication as prescribed, and sign releases for DCS; (2) provide DCS with proof of completion of the assessment and any diagnoses; (3) submit to random drug screens and pill counts and bring prescriptions to screenings; (4) complete an alcohol and drug assessment, continue treatment until released by a provider, and sign releases for DCS; (5) have their name on a lease or mortgage; (6) obtain and maintain stable housing for at least three months, provide proof of housing to DCS, and provide proof of rent or mortgage and utilities to DCS; (7) comply with random home visits by DCS; (8) obtain and maintain and provide proof of legal income; (9) pay child support as ordered; (10) complete parenting classes, provide proof to DCS, and sign releases for DCS; (11) utilize skills learned in classes to parent the children; (12) generally behave appropriately at visits, be on time to visits, provide snacks and meals at visits, and not use or be under the influence of alcohol or drugs at visits; and (13) ensure access to transportation, have a valid driver's license, and have appropriate restraints for children in the vehicle. DCS revised the plan on November 6, 2020, but Mother's requirements did not change. The Juvenile Court ratified the revised plan at a hearing on April 22, 2021.[4]

On October 1, 2020, DCS filed a petition to terminate Parents' parental rights to Legion in the Juvenile Court,[5] alleging as grounds for termination severe child abuse and failure to manifest an ability and willingness to assume custody of Legion. The petition also alleged that terminating Parents' parental rights was in Legion's best interest.

---

into the temporary custody of DCS "due to allegations of sexual abuse and substance abuse in the home, improper supervision & improper guardianship."

[3] Neonatal abstinence syndrome "is caused when a baby withdraws from drugs, usually opioids, to which the baby has been exposed in utero." *Effler v. Purdue Pharma L.P.*, 614 S.W.3d 681, 687 n.5 (Tenn. 2020) (citation omitted).

[4] Additional permanency plans were developed by DCS and ratified by the Juvenile Court after DCS filed its petition to terminate Mother's parental rights on February 11, 2020. These plans included substantially the same requirements as those in the previous two plans.

[5] DCS had previously filed in the Juvenile Court, on February 11, 2020, a petition to terminate Parents' parental rights as to four of Legion's siblings. An appeal concerning one of the siblings in that case, Masson S., was consolidated with the present appeal for purposes of oral argument. A separate opinion in that appeal is being filed concurrently with this opinion.

Legion's maternal grandparents, William and Shirley P. ("Grandparents"), filed a "Motion to Intervene and for Temporary Legal Custody and Physical Custody" as to Legion and her sibling Masson S. in the Juvenile Court on October 22, 2020. The motion asserted that they were Legion's maternal grandparents; that they were financially and physically able to care for her; and that it would be in her best interest to be placed with them. The record does not contain an order addressing this motion. Grandparents also filed a notice in the Juvenile Court, stating that they had filed a petition for termination of parental rights and adoption in the Anderson County Circuit Court. [6]

On July 22, 2021, the Juvenile Court held a hearing on DCS's petition to terminate Mother's parental rights to Legion and her siblings.[7] At the outset, DCS non-suited the petition as to two of Legion's siblings and asked the court to hold the petition in abeyance as to another sibling. The hearing proceeded as to Legion and Masson. The court heard testimony from Melinda Edmonds, a DCS foster care team leader; Michelle Weitzel, a DCS foster care manager; Mother; and William P., the maternal grandfather. The court admitted into evidence, as a collective exhibit from DCS, a notebook of the filings in the dependency and neglect proceedings. The notebook included criminal citations, arrest warrants, and judgments against Mother.

The Juvenile Court entered a final written order terminating Mother's parental rights to Legion on September 18, 2021, concluding that DCS proved by clear and convincing evidence the two statutory grounds for termination it had alleged and that terminating Mother's parental rights was in Legion's best interest. Mother timely appealed.[8]

## ISSUE PRESENTED

The sole issue raised by Mother in this appeal is whether the trial court erred in terminating her parental rights by not placing Legion with Grandparents.

## STANDARD OF REVIEW

Our Supreme Court has explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley*

---

[6] Although that petition does not appear in the record before us, we take judicial notice of a February 9, 2021 order nonsuiting that petition, a copy of which DCS appended to its brief. *See Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 862 n.5 (Tenn. 2016); *see also* Tenn. R. Evid. 201.

[7] This was a consolidated hearing during which the Juvenile Court also heard DCS's February 2020 petition to terminate Parents' parental rights to Masson.

[8] Father is not a party to this appeal. We will only make reference to him as necessary hereinafter.

*v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors....' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016). Tennessee Code Annotated section 36-1-113 provides the various grounds for termination of parental rights. *See* Tenn. Code Ann. § 36-1-113(g). "A party seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)).

In light of the substantial interests at stake in termination proceedings, the heightened standard of clear and convincing evidence applies. *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky*, 455 U.S. at 769). This heightened burden "minimizes the risk of erroneous governmental interference with fundamental parental rights[,]" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *Id.* (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)). Accordingly, the standard of review in termination of parental rights cases is as follows:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596–97. The trial court's ruling that

the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 523–24.

We give considerable deference to a trial court's findings about witness credibility and the weight of oral testimony, as the trial court had the opportunity to see and hear the witnesses. *State Dep't of Children's Servs. v. T.M.B.K.*, 197 S.W.3d 282, 288 (Tenn. Ct. App. 2006). Where an issue "hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings." *Id.* (citing *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990)); *see also Franklin Cnty. Bd. of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) ("If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary.").

ANALYSIS

In order to terminate parental rights, a trial court must find by clear and convincing evidence that: (1) statutory grounds for termination of parental and guardianship rights have been established, and (2) termination is in the best interests of the child. *See* Tenn. Code Ann. § 36-1-113(c). Although Mother has not challenged the Juvenile Court's conclusion that DCS established two statutory grounds for terminating her parental rights and that terminating those rights is in the best interest of Legion, this Court "must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 525–26. Accordingly, we begin our analysis by reviewing whether the proof presented at trial constitutes clear and convincing evidence of each ground for termination listed in the Juvenile Court's Final Order.

## I.      Grounds for Termination

### A.      Severe Child Abuse

Under Tennessee Code Annotated section 36-1-113(g)(4), parental rights may be terminated when

> [t]he parent . . . has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the

court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

Tenn. Code Ann. § 36-1-113(g)(4). Section 37-1-102 defines severe child abuse, in relevant part, as:

> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
>
> . . . .
>
> (E) Knowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child.

*Id.* § 37-1-102(b)(27).

Here, as part of the termination proceedings, the Juvenile Court specifically found that Mother "committed severe child abuse against [Legion] by knowingly exposing [her] to in-utero substance abuse." This finding is amply supported by the record. At birth, Legion tested positive for buprenorphine, methamphetamine, and THC and was diagnosed with NAS; Mother tested positive for these substances on the same day. As a result, the Juvenile Court ordered Legion into DCS custody at a mere five days of age. She has remained in foster care ever since. Ms. Edmonds testified that Mother continued to use drugs during her pregnancy with Legion despite DCS's ongoing efforts to help her achieve sobriety. A January 2020 permanency hearing order in the record indicates that while pregnant with Legion, Mother "was advised of the harms of in-utero substance abuse including NAS." As this Court has previously stated, "prenatal abuse of controlled substances constitutes severe child abuse, whether or not the child actually suffers harm." *In re Shannon P.*, No. E2012-00445-COA-R3PT, 2013 WL 3777174, at *5 (Tenn. Ct. App. July 16, 2013) (citing *In re M.J.J.*, No. M2004-02759-COA-R3-PT, 2005 WL 873305, at *8 (Tenn. Ct. App. Apr. 14, 2005)). And, "[g]enerally, '[c]lear and convincing evidence of severe child abuse is present when a child is exposed to methamphetamine.'" *In re Sophia S.*, No. E2020-01031-COA-R3-PT, 2021 WL 3236347, at *6 (Tenn. Ct. App. July 30, 2021) (quoting *In re Caydan T.*, No. W2019-01436-COA-R3-PT, 2020 WL 1692300, at *5 (Tenn. Ct. App. Apr. 7, 2020)). Mother presented no evidence or argument to the contrary. We affirm the trial court's decision to terminate Mother's parental rights on this ground.

## B.     Failure to Manifest an Ability and Willingness to Assume Custody

Tennessee Code Annotated section 36-1-113(g)(14) provides an additional ground for termination when:

> [a] parent . . . has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

This ground requires clear and convincing proof of two elements. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). The petitioner must first prove that the parent has failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child. *Id.* The petitioner must then prove that placing the child in the custody of the parent poses "a risk of substantial harm to the physical or psychological welfare of the child." *Id.* The statute requires "a parent to manifest both an ability and willingness" to personally assume legal and physical custody or financial responsibility for the child. *Id.* at 677. Therefore, if a party seeking termination of parental rights establishes that a parent or guardian "failed to manifest *either* ability or willingness, then the first prong of the statute is satisfied." *Id.* (citing *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, *13 (Tenn. Ct. App. June 20, 2018)).

As to the second prong of section 36-1-113(g)(14),

> [t]he courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

The Juvenile Court found there was clear and convincing evidence that Mother failed to manifest an ability and willingness to assume legal and physical custody of Legion, referencing Mother's continuous housing instability, substance abuse, and failure to maintain communication with DCS, despite the agency's assistance. The court noted Mother's positive drug tests in April 2021, almost a full year after Legion's removal from her care. These findings are supported by the record, uncontroverted, and lead to the

conclusion that Mother manifested neither an ability nor a willingness to assume custody of Legion. Ms. Edmonds expressed concern about Mother's ability to provide a safe and stable home due to her repeated positive drug tests, failure to follow recommendations of mental health and drug and alcohol assessments, and criminal charges. She also noted that Mother never visited Legion after removal. Ms. Weitzel confirmed that Mother tested positive for methamphetamine, diazepam, THC, and benzodiazepines in April 2021. In addition, Ms. Weitzel stated that DCS was unable to verify Mother's housing because no one was home when DCS visited. Furthermore, certified mail to the address provided by Mother had been returned to DCS as undeliverable. In light of these uncontroverted facts, we agree with the Juvenile Court that the first prong of section 36-1-113(g)(14) is satisfied by clear and convincing evidence.

The record also supports the Juvenile Court's finding that the second prong of section 36-1-113(g)(14) is satisfied. Legion was removed from Mother's care due to substance abuse, an issue that had not been resolved at the time of trial. Mother did not testify or offer any evidence to the contrary. Nor did she address her failure to secure a suitable home or to ever visit Legion. Moreover, Ms. Edmonds testified that Legion has formed a bond with her foster family, who has provided her with a safe and stable environment. Ms. Weitzel corroborated this testimony, stating that Legion "just loves her foster mom and they have a very strong bond" and that she has "also bonded with the other children in the home as well." Ms. Weitzel added that the foster family wants to adopt Legion and that Masson and Legion have not met each other and do not have any kind of bond that would be disrupted if they were to be adopted by separate foster families. Finally, Ms. Weitzel said that it would be detrimental to remove Legion from her foster home because "Legion has not known any other family." Consequently, we conclude, as did the Juvenile Court, that placing Legion in the custody of Mother "pose[s] a risk of substantial harm to [her] physical [and] psychological welfare." Tenn. Code Ann. § 36-1-113(g)(14). This ground was established by clear and convincing evidence. We affirm.

## II.     Best Interests of the Child

In addition to proving at least one statutory ground for termination, a party seeking to terminate a parent's rights must prove by clear and convincing evidence that termination is in the child's best interests. Tenn. Code Ann. § 36-1-113(c). Indeed, "a finding of unfitness does not necessarily require that the parent's rights be terminated." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187 (Tenn. Ct. App. 2004)). Rather, our termination statutes recognize that "not all parental conduct is irredeemable[,]" and that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* As such, the focus of the best interests analysis is not the parent but rather the child. *Id.*; *see also White*, 171 S.W.3d at 194 ("[A] child's best interest must be viewed from the child's, rather than the parent's, perspective.").

We consider nine statutory factors when analyzing best interests:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (Supp. 2020).

This list is non-exhaustive.[9] *In re Marr*, 194 S.W.3d at 499. "Ascertaining a child's

---

[9] The Tennessee General Assembly recently amended the statutory best interest factors provided in Tennessee Code Annotated section 36-1-113(i). *See* 2021 Tenn. Pub. Acts, ch. 190 § 1. This amendment does not affect the instant case because we apply the version of the statute in effect at the time the petition

best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent." *Id.* "The relevancy and weight to be given each factor depends on the unique facts of each case." *Id.* "Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *Id.* (citing *In re Audrey S.*, 182 S.W.3d at 877).

In determining that terminating Mother's parental rights is in Legion's best interest, the Juvenile Court made specific findings concerning each statutory factor listed in Tennessee Code Annotated section 36-1-113(i). The court found that Mother made no changes in her circumstances or conduct—despite having received assistance from DCS—because she has no stable home, continues to use drugs and to engage in criminal behavior, and has not maintained contact with Legion. *Id.* § 36-1-113(i)(1)-(2). The court also found that Mother did not visit Legion or have a meaningful relationship with her and that changing her current foster placement would "have a detrimental effect" because of her bonding with the foster family. The record reflects that Mother never visited Legion after her removal from Mother's custody, and according to Ms. Weitzel, Legion "loves her foster mom and . . . [s]he's also bonded with the other children at the home as well." Ms. Weitzel also stated her concern that removal from the foster home would be detrimental to Legion because she "has not known any other family." *See id.* § 36-1-113(i)(3)-(5).

The Juvenile Court found that Parents abused Legion and that Mother continues to engage in criminal activity, which renders her "consistently unable to care for the child in a safe and stable manner." *Id.* § 36-1-113(i)(6)-(7). The record is clear on this. We also agree with the court that Mother's mental or emotional state would be detrimental to Legion, inasmuch as her mental or emotional state has kept her from "effectively providing safe and stable care and supervision for the child." *Id.* § 36-1-113(i)(8). Indeed, Mother never visited Legion after removal, and the record indicates no interest or effort on her part in this regard. The court did not make findings concerning child support. *Id.* § 36-1-113(i)(9).

On this record, it is evident that the statutory factors, taken as a whole, demonstrate that terminating Mother's parental rights is undoubtedly in Legion's best interests. As the Juvenile Court stated, it boils down to this: Mother has "shown little or no interest in the welfare of the child" and, after Legion's removal from her custody, "continue[d] to make lifestyle choices which prevent [her] from being able to safely parent the child."

### III.    Placement with Grandparents

The last issue before us—and the only one raised by Mother on appeal—is whether the Juvenile Court committed reversible error by failing to place Legion with her maternal

---

for termination was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

- 10 -

Grandparents. Mother argues that DCS was required to place Legion with Grandparents and that because such action did not take place, the Juvenile Court was precluded from terminating her parental rights. In support of this position, Mother references Tennessee Code Annotated sections 37-1-129 and -130 and DCS Administrative Policies and Procedures: 16.46. She also notes that the trial court did not address the motion to intervene and for temporary legal and physical custody filed by Grandparents on October 26, 2020.[10] DCS responds that the court properly did not consider Grandparents' motion because the motion did not seek to intervene in the termination proceedings, ask for guardianship of Legion, or state that Grandparents were prospective parents. In other words, DCS asserts that termination proceedings do not determine custody or placement, which is what Grandparents requested in their motion. In addition, DCS asserts that in termination proceedings, a trial court is not required to consider whether DCS had placed a child with relatives.

Mother's argument is not novel to this Court. In *In re Aiden R. B.*, a mother whose parental rights were terminated argued on appeal that the trial court erred in terminating her parental rights because "DCS failed to make reasonable efforts to reunite the Children with their maternal family." No. E2011-00147-COA-R3PT, 2011 WL 2206637, at *11 (Tenn. Ct. App. June 7, 2011). We rejected that notion, clarifying that the matter under this Court's review "does not concern the placement of the Children but instead is a proceeding to terminate Mother's parental rights . . . [and] that Mother's extended family never undertook any legal action to attempt to gain custody of the Children, if ever, *until after* the petition to terminate Mother's parental rights had been filed after the completion of the dependency and neglect proceeding." *Id.* (emphasis added). We then explained that "DCS is not required under either statutory or case law to make reasonable efforts to reunite children with their extended family prior to terminating a parent's parental rights." *Id.*

Here, three weeks after DCS filed its petition to terminate Mother's parental rights, Grandparents filed a motion requesting that the Juvenile Court "grant [them] physical and legal custody of [Legion]." After a full hearing, the court determined that DCS established by clear and convincing evidence (1) at least one statutory ground for termination alleged by DCS in its petition and (2) that termination of Mother's parental rights is in the best interest of Legion. *See In re James W.*, No. E2020-01440-COA-R3-PT, 2021 WL 2800523, at *18 (Tenn. Ct. App. July 6, 2021) (citing Tenn. Code Ann. § 36-1-113(c); *In re Kaliyah S.*, 455 S.W.3d at 552). The statutory framework required no more from DCS in proving its case or from the Juvenile Court in deciding whether to terminate Mother's parental rights to Legion. Mother presented no applicable authority to the contrary, and we have found none.[11] Discerning no error, we affirm.

---

[10] Grandparents are not a party to this appeal.

[11] The two statutes cited by Mother, from Title 37 of the Tennessee Code, are not applicable to termination of parental rights proceedings, which are governed by Title 36. *In re Jah'Lila S.*, No. W2021-01199-COA-R3-PT, 2022 WL 4362839, at *3 (Tenn. Ct. App. Sept. 21, 2022) ("Tennessee Code Annotated section 36-1-113 governs the termination of parental rights in Tennessee."). Likewise, Administrative

## CONCLUSION

The judgment of the Juvenile Court is affirmed in all respects and the case remanded for proceedings consistent with this opinion. Costs of this appeal are assessed to the appellant, Alisa S., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

---

Policies and Procedures: 16.46 on "Child/Youth Referral and Placement" was promulgated under the authority of Title 37. *See* DCS Admin. Pol'ies & Procs: 16.46, https://www.tn.gov/dcs/program-areas/qi/policies-reports-manuals/policiesprocedures.html (last visited October 26, 2022).